JOHN HARDY *vs.* ORISSA J. SMITH, executrix, & others.

WINSLOW WARREN & another, executors, *vs.* JOHN HARDY & another.

ORISSA J. SMITH, executrix, *vs.* JOHN HARDY.

Suffolk. Nov. 23, 1883. — Jan. 5, 1884. C. ALLEN & HOLMES, JJ., absent.

A married woman, by an agreement with her husband, obtained a divorce from him, which was void, and afterwards went through a form of marriage to one P., with whom she lived as his wife until her death. She left a will, in which she described herself as the " wife of P."; by which she gave one half of all her personal property to her " husband," and authorized her " husband " to remain in possession of her house for a certain time after her death; and of which she appointed her " husband " executor. *Held,* that by the term " husband " the testatrix intended P., and not her lawful husband.

Under the Gen. Sts. *c.* 107, § 54, a divorce obtained in another State, by an inhabitant of this Commonwealth, for an alleged cause which occurred here while the parties resided here, is of no force or effect here; and, both parties being inhabitants of this Commonwealth, and neither of them ever having been in the State where the divorce was obtained, the court granting it had no jurisdiction of the parties, and the divorce is wholly void.

H. and M. were lawfully married in this Commonwealth, and lived together here as husband and wife for several years. They then entered into an agreement in writing, at her request, with a view that she might marry one P., by which the husband agreed to furnish evidence and allow the wife to procure a divorce from him for adultery, and she agreed to pay him a sum of money when the divorce was obtained. A libel for divorce was signed and sworn to by her in this Commonwealth, and, on the same day and at the same place, he signed an acknowledgment of service of the libel and a consent to be defaulted, and procured an affidavit of a witness of evidence, fabricated by the husband, of adultery by him. These papers were presented to a court in Utah, and a decree of divorce was rendered thereon. The wife then informed the husband that she had obtained a divorce, and he left her house and they did not live together afterwards. She then went through a form of marriage with P., with whom she lived as his wife until her death; and she and P. paid H. the sum of money agreed upon. While she was living with P., she made a will, to which H. did not consent in writing. *Held,* that H. was entitled to claim a distributive share in the estate of his wife.

W. ALLEN, J. These are appeals from a decree of the Probate Court upon the petition of John Hardy, praying to be allowed one half of the personal estate of Mary M. Hardy, also called Mary M. Perkins, deceased, as a legatee under her will, and one half as her husband, alleging that he did not consent in writing to the will. The other parties are the executrix of the will of Mary M. Hardy, and the executors of the will of Ezra G. Perkins, who died after the decease of said Mary M. The decree found that John Hardy was the lawful husband of the testatrix; that he was not a legatee under the will; that he did not consent in writing to the will, and was as husband entitled to one half of the personal property under the statute of distribution; and ordered that one half of the personal property should be paid to him. John Hardy appealed from so much of the decree as refused his petition for the bequest, and the other parties severally appealed from the other parts of the decree.

The material parts of the will are as follows: " The last will and testament of Mary M. Perkins, wife of Ezra G. Perkins, of Boston, Massachusetts." Then follow various devises of real estate, and small bequests of personal property. The sixth clause is, " I give and bequeath to my husband one half of all my personal property." By the seventh clause she gave all the residue of her personal property to her brother. The eighth clause was, " I authorize my husband to remain in possession of my house for three months after my death; " and the last clause, " I appoint

my husband and my sister Orissa joint executors of this my last will and testament."

In no view can the petitioner be entitled to more than one half of the personal property of the testatrix. If he has the rights of her husband, she has exercised her statutory right to will one half of the personal property away from him. Whether he takes one half as legatee under the will, or as distributee under the statute, the will operates to deprive him of the other half. The language of the statute is explicit: "A married woman may make a will in the same manner and with the same effect as if she were sole, except that such will shall not, without the husband's written consent, operate to deprive him of his tenancy by the curtesy in her real estate or of more than one half of her personal estate." (Pub. Sts. c. 147, § 6. Gen Sts. c. 108, §§ 9, 10.) This is perhaps a sufficient answer to John Hardy's appeal, which is only from the finding of the Probate Court that he was not entitled to take as legatee. If we should hold that that finding was wrong, and that he is entitled to take one half of the personal estate under the bequest, we could not change the decree, which is that one half of the personal property shall be paid to him. We think, however, that the finding was right. The evidence from the will itself, as well as the extraneous evidence, shows clearly that the testatrix did not intend to designate the petitioner as her husband when she used that word in her will. The objection made by the petitioner is not to the weight, but to the competency, of the evidence. It is contended that there is a conclusive presumption, which no evidence is competent to rebut, that by the word "husband," in her will, the testatrix meant her lawful husband. We think that it is a question of the intention of the testatrix, to be determined by evidence competent to show intention. The word is used to designate a particular person. The fact that a person is the lawful husband is strong, and of itself plenary proof that he was the person intended; but it is not conclusive, and may be controlled by stronger evidence, from the will or from circumstances, that he was not the person intended. Even if, as was argued, there appears to have been an unlawful or immoral purpose to put another in the place of her husband, the court are not asked to carry out that purpose, but only to find whether

it existed. If that intent appears, the husband is not the lega-tee. He has no vested right to be made a legatee, and cannot become such by estoppel, or as a consequence of immoral or reprehensible provisions in the will, but only by the intention of the testatrix.

The executrix, to show that the petitioner is not entitled to a husband's share in the personal estate of the testatrix, offer a decree of divorce of a probate court in Utah. This was clearly incompetent to prove a divorce. It was not only a decree ob-tained by an inhabitant of this Commonwealth for an alleged cause which occurred here while the parties resided here, and therefore, by statute, of no force or effect here; Gen. Sts. *c.* 107, §§ 54, 55; Pub. Sts. *c.* 146, § 41; but it was a decree of a court which had no jurisdiction of the parties, both of them being inhabitants of this Commonwealth, and neither of them having ever been in Utah, and was wholly void. *Sewall* v. *Sewall*, 122 Mass. 156. *Smith* v. *Smith*, 13 Gray, 209. *Chase* v. *Chase*, 6 Gray, 157. *Folger* v. *Columbian Ins. Co.* 99 Mass. 267.

It is not contended by the executrix that John Hardy ex-pressly consented in writing to the will, but it is argued that his written consent to the divorce, and his receiving money therefor, involved and amount to an assent in writing to the will, and estop him from denying either such consent or the validity of the divorce; that, while the proceedings relating to the di-vorce may be incompetent to affect the status of John Hardy as husband of the testatrix, they are competent to affect an inci-dent of that relation, and to estop him from claiming any of the rights of a husband. The best refutation of this argument is the statement of the evidence which it would render compe-tent to meet proof that the parties were lawfully married in Boston in this Commonwealth in April, 1869, and lived together as husband and wife in Boston until May 1, 1877, and both con-tinued to reside here until the decease of the testatrix in 1878, and that the will was made on January 1, 1878, and the hus-band did not consent in writing to it. To control these facts, evidence is offered that would prove that, on April 4, 1877, while the husband and wife were living together, they made an agreement in writing, at the request of the wife, with a view

that she should marry Ezra G. Perkins, by which the husband agreed to furnish evidence, and to allow the wife to procure a divorce from him for adultery, and the wife agreed to pay him $5000 when a divorce should be obtained; that a libel for divorce was signed and sworn to by the wife in Boston, on the thirteenth day of the same April, and on the same day, and at the same place, the husband signed an acknowledgment of service of the libel, and a consent to be defaulted, and procured an affidavit of a witness of evidence, fabricated by the husband, of adultery by him; that on the twenty-fourth day of the same April, those papers were presented to the Probate Court in and for Salt Lake County in the Territory of Utah, and a decree of divorce was rendered thereon; that on the first of May the wife informed the husband that she had obtained a divorce, and he left her house and they have not lived together since; that on the fifteenth day of the same month, the wife and said Ezra G. Perkins went through a form of marriage to each other, and thereafter lived together as husband and wife at said Boston until the decease of said Mary M., and that said Mary M. and Ezra G. paid the $5000 to the petitioner. No question of estoppel can arise between the parties to such a transaction. A party must be in a condition to assert a right before he can maintain it by estoppel. The evidence is as clearly incompetent to sustain a right of one of the conspirators to require another to carry out his part of the scheme of fraud upon the law, as it is to establish the legal status of a party to the infamous transaction.                                   *Decree affirmed.*

*C. Houghton*, for Hardy.

*N. B. Bryant*, for the executrix.

No counsel appeared for the executors.