Merrimack,  }
June 2, 1914. }

### PAGE BELTING CO. *v.* FREDERICK H. PRINCE & *a.*

Evidence that a vendor of bonds concealed from the purchaser the facts that the
municipality which issued the obligations had not been and would not be paid
therefor and that litigation was likely to follow warrants a finding that the sale
was induced by actionable fraud.

A vendee who rescinds a sale for fraud is not bound to return the property or its
proceeds unless equity so requires.

A sale of corporate stock at a price greatly in excess of its true value, without any
representations on the part of the vendor, is not conclusive evidence of the
latter's fraud.

The statute of limitations does not run against a vendee's right to rescind a sale
for fraud, during the period of the vendor's absence from the state.

Where there has been no change in the circumstances since the date of the sale, a
vendee who desires to rescind on the ground of fraud is not chargeable with
laches, as matter of law, if he delays suit until he has an opportunity to pursue
his equitable remedy in the courts of his own state against a non-resident vendor.

The claim that a proceeding is collusive between certain parties thereto is not
conclusively established by evidence which only inferentially makes out the
defence alleged.

One who is permitted to intervene in a pending action and assert title to the
property involved in the suit is bound by the judgment rendered in the pro-
ceeding.

BILL OF INTERPLEADER, being the same case reported 74 N. H.
262. Trial by the court. Facts found, and case transferred from
the April term, 1913, of the superior court, by *Wallace*, C. J.

After the decision overruling the demurrer of Prince & Co., they
filed an answer disclaiming any beneficial interest in the 435 shares
of Page Belting Company stock and the accrued dividends thereon
here in litigation, and alleged that they held title to the same as
trustees under an agreement between E. G. & E. Wallace and
Coffin & Stanton. Thereafter William B. Hord, a receiver of the
insolvent estate of Coffin & Stanton, appeared and by leave of
court became a party to the suit and claimed title to the property.
The court permitted the Wallaces to amend their answer by adding
a claim for unliquidated damages growing out of the sale of the
two lots of bonds hereinafter referred to. The receiver excepted
to the allowance of the amendment, and also to the overruling of
his demurrer, which was based upon the grounds that the amended

bill states that the title is in the Wallaces, and that the claim for damages to be satisfied out of the stock, being of a different nature and character from the claims of Prince & Co. and of the receiver, is therefore not a proper subject for a bill of interpleader.

The facts found were in substance as follows:

In August, 1894, E. G. & E. Wallace made a contract whereby they sold 870 shares of the stock of the Page Belting Company to Coffin & Stanton for $85 a share, and bought from Coffin & Stanton $150,000 of the bonds of the city of Santa Cruz, California, at par, and $150,000 of the bonds of the city of Ironwood, Michigan, at $105. One half the stock was to be delivered on each lot of bonds. The Santa Cruz bonds were delivered to the Wallaces, who turned over 435 shares of stock and paid the balance of the agreed price in cash. There was delay over the issue of the Ironwood bonds, and as a part of the contract the first 435 shares of stock were put in the hands of Prince & Co., as security for the future delivery of those bonds. During these transactions the Wallaces knew that the stock was worth only $30 a share, but they made no representations on the subject and were not guilty of any fraud or wrongdoing.

At the time of these transactions Coffin & Stanton were hopelessly insolvent and knew they were about to fail. They fraudulently concealed from the Wallaces the fact that they had received the Santa Cruz bonds from the city without paying for the same, and that there was likely to be litigation on that account. There was also fraud in the sale of the Ironwood bonds, which sale was never consummated. Coffin & Stanton failed in October, 1894, and in the ensuing litigation over the Santa Cruz bonds the Wallaces expended over $22,000. After the final decision that the bonds were valid in the hands of *bona fide* purchasers for value (*Waite v. Santa Cruz*, 184 U. S. 302), the Wallaces settled with the city for the face value of the bonds, discounting about $60,000 interest. This was done, as one of the parties testified, because the city was poor and unable to pay more, and this was the best that could be done.

There has been no communication between Coffin & Stanton and the Wallaces on the subject since the failure. The Wallaces have always understood that they owned the stock, and asserted this claim to the corporation in 1899 and to Prince & Co. at a later date, when they demanded a transfer of the stock. Neither the Wallaces nor the receivers have intended to abandon their respec-

tive claims to the stock, neither has done any act indicating such intention, and there has been no change in the circumstances affecting the rights of either. Prince & Co. continued to collect the dividends until 1903, when payment was stopped upon the order of the Wallaces. They are not acting in collusion with the corporation in this matter.

At the close of the evidence for the Wallaces, the receiver moved that the bill be dismissed for lack of jurisdiction, upon the following grounds: (1) The amended bill states that the property belongs to the Wallaces, so that it appears the plaintiff is not in doubt as to the title. (2) Collusion is conclusively shown. (3) It conclusively appears that Prince & Co. have title as trustees and are entitled to receive the dividends. (4) The Wallaces' claim for unliquidated damages is of a different nature from those of Prince & Co. and the receiver. At the close of all the evidence, the receiver moved for a decree that he owned the stock, upon the ground that on the pleadings and evidence such fact conclusively appeared. He also renewed his motion to dismiss for want of jurisdiction. Both motions were denied, subject to exception.

Upon the facts found, it was held that the Wallaces were entitled to claim the stock and dividends because of the fraud in the sale of the Santa Cruz bonds. There was also an alternative holding that the bonds be applied to make up the loss caused to the Wallaces by the fraud as to the Ironwood bonds. The receiver excepted to these conclusions and also to a refusal to find that collusion was conclusively shown.

*Elwin L. Page*, for the plaintiff.

*Jones, Warren, Wilson & Manning*, for Prince & Co.

*Streeter, Demond, Woodworth & Sulloway* (*Mr. Streeter* orally), for the Wallaces.

*Remick & Jackson* and *Hollis & Murchie* (*Mr. Remick* and *Mr. Hollis* orally), for Hord, receiver.

Peaslee, J. The exceptions transferred, so far as they are material in the view here taken, involve these questions: (1) Whether there was evidence to justify a finding of fraud in the contract as to the Santa Cruz bonds; (2) whether the Wallaces can rescind with-

out returning those bonds; (3) whether the right of rescission is barred by lapse of time; (4) whether it conclusively appears that there was collusion between the plaintiff and the Wallaces; (5) whether upon the amended pleadings the bill can be maintained.

1. Upon the issue of fraud in the sale of the Santa Cruz bonds, it is found that Coffin & Stanton concealed the fact that the bonds were not, and would not be, paid for. It is argued that this is immaterial, because Coffin & Stanton had good title, and in the litigation over the bonds which followed, the defence that they were not paid for was not set up. The decision in *Waite* v. *Santa Cruz*, 184 U. S. 302, turns upon the fact that the plaintiff represented parties who were *bona fide* holders for value of the bonds in question. It thus appears that the facts as to Coffin & Stanton's relation to the property, aside from the naked proposition of title in the narrower sense, was material in the transaction with the Wallaces. It was of consequence whether Coffin & Stanton were or were not *bona fide* holders for value.

The fact that the bonds had not been paid for was material in other respects. If litigation arose over the legality of the issue, a city might escape liability if it had gained nothing from the transaction, when, on the other hand, if it had received the proceeds of the issue it might be held liable on a theory of unjust enrichment. The materiality of these facts in this litigation more fully appears in the report of the case in the lower federal courts. *Waite* v. *Santa Cruz*, 89 Fed. Rep. 619; *Santa Cruz* v. *Waite*, 98 Fed. Rep. 387.

Again, as a business proposition every one knows that many Western municipal obligations have been repudiated because the places have not prospered. Compromises of all sorts have been accepted. The fact that a small city like Santa Cruz had been deprived of the proceeds of a third of a million dollars worth of bonds would suggest to any investor the likelihood that a discount would be unavoidable. That the fact would injure the sale of the bonds is beyond dispute. There is sufficient evidence here that the loss of interest came directly from the facts which were concealed. One witness testified that the discount of about $60,000 interest was made because the city was poor and unable to pay. The fact that Coffin & Stanton had caused the city a loss of several times this amount on these same bonds is significant of the cause of municipal poverty and the demand for a discount in this particular case.

There is no error of law in the finding that the sale of the Santa Cruz bonds was induced by actionable fraud.

It is said that there is no evidence that Coffin & Stanton knew, or had reason to believe, that there would be trouble over the bonds. While there is no direct evidence of the fact, there is an abundance from which the inference might be drawn. The city had no authority to sell, except for cash. Coffin & Stanton took the bonds on credit. In the hands of one not a *bona fide* holder for value, these facts invalidated the bonds. *Waite* v. *Santa Cruz*, 184 U. S. 302. So far from having, as the receiver claims, an unimpeachable title, it appears that the title of Coffin & Stanton was worthless as between them and the maker of the bonds. They were men of large experience in these matters; and when they disposed of property to which they had so imperfect a title, it is morally certain that they knew litigation was likely to follow. In any event, such a fact might be inferred from the evidence.

2. Because of this fraud, the Wallaces claim to exercise an equitable right of rescission. It is objected that this cannot be done because they have kept the bonds received by them as a part of the repudiated transaction. While by the strict common-law rule one could not rescind save by putting the other party *in statu quo*, the theory has been much broken in upon since the distinction between legal and equitable relief has come to be largely disregarded; and the rule now in this jurisdiction is that the rescinding party is only required "to do what equitably he ought to do." *Mead* v. *Welch*, 67 N. H. 341, 342; *Thorpe* v. *Packard*, 73 N. H. 235. See, also, *Sipola* v. *Winship*, 74 N. H. 240.

In view of the fact that the Wallaces have made a substantial loss in the transaction, even after retaining the bonds, it seems plain that equity would not require that the bonds or their proceeds be given up. This conclusion is combatted upon the ground that in this sale the Wallaces were themselves guilty of gross fraud. The finding to the contrary is attacked as not being supported by the evidence. The claim is that it conclusively appears that the Wallaces deceived Coffin & Stanton as to the value of the stock here in litigation. The only evidence of this is the fact that the stock was sold for much more than it was worth. However persuasive this may be in favor of the result claimed, it certainly is not conclusive. The conclusion rests upon inference alone; and where inferences are to be drawn, the question is one of fact unless one conclusion is certain and uncontrovertible. *Lyman* v. *Railroad*, 66 N. H. 200.

3. It is next claimed that the right to rescind is barred by the statute of limitations, or by laches. The right accrued nearly twenty years ago and would be barred at the same time as other suits for the same wrong would be, that is, in six years. But the statute runs only in favor of those who are within the state. "If the defendant in a personal action was absent from and residing out of the state at the time the cause of action accrued, or afterward, the time of such absence shall be excluded in computing the time limited for bringing the action." P. S., c. 217, s. 8. The defence of the statute is here set up in the interest of the estate of Coffin & Stanton; and as neither they nor their representative have been in the state until the appearance of the receiver in this litigation, it follows that they cannot claim the benefit of the statute. *Quarles* v. *Bickford*, 64 N. H. 425; *Howard* v. *Fletcher*, 59 N. H. 151.

Upon the question of laches there is no specific finding by the trial court. None was requested by either party, the receiver relying upon his general exception to the order made upon the facts found.

Whether delay in asserting an equitable claim is unreasonable is a question of fact. *Alden* v. *Gibson*, 63 N. H. 12; *Ashuelot R. R.* v. *Elliot*, 52 N. H. 387, 400. "When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the bill or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches." *Kelly* v. *Boettcher*, 85 Fed. Rep. 55, 62; 5 Pom. Eq. Jur., s. 20. As the matter is one of defence, the case stands as it would upon an affirmative finding that there was no unreasonable delay. The receiver can take nothing by the objection here, unless his position is conclusively established by the pleadings or the evidence.

In one sense there has been a long delay, but in the legal sense there has been none. The delay referred to in the rule on the subject consists of a failure to assert a right when one has the power to do so. But in this case there has been no opportunity for these citizens of this state to assert their rights in the local forum until this time. It is true that they might have gone to New York and litigated the question against the representatives of Coffin & Stanton there; but that is more than the law requires, certainly in ordinary cases. If there might be cases where on account of changing circumstances such extreme vigilance would be demanded, this is not one of them. It is found that there has been no change here.

All things remain as they were when the sale was made. Under such circumstances it may not be unreasonable for the injured party to wait until there is opportunity to pursue his equitable remedy in the courts of his own state. Any other conclusion would be out of harmony with the declared policy of the state as to the limitation of personal actions against non-residents.

4. The claim that the proceeding is collusive, as between the plaintiff and the Wallaces, is based upon the facts that one of the Wallaces was president of the Belting Company, that they have at times been represented by the same counsel, that the company has from time to time acted upon the Wallaces' request, or order, in its dealings as to this stock with Prince & Co., and that after the Wallaces filed their original answer the plaintiff adopted it as a part of its bill. However significant these facts may be, they still fall short of concluding the matter. Inferences must be drawn from them in order to make out the defence alleged. It may be that in spite of all these facts the company acted of its own volition in filing the bill, and that the affidavit of non-collusion states the truth. Upon this issue, as upon others heretofore considered, the receiver's difficulty is that at the most he had a good case on the evidence. It was incumbent on him to procure from the trier of facts findings in accordance with the claims set up. Having failed in this, he has no further recourse along this line.

5. Finally, it is argued that upon the pleadings and facts the bill cannot be maintained. At times the receiver appears to rely upon the pleadings as determinative of this question, and at other times upon the evidence reported and the facts found. It can hardly be necessary to say that the latter position is the correct one in this jurisdiction. There was a controversy between some of these defendants. It has been fully and understandingly tried. All parties in interest have appeared and been fully heard. In this state of the case, it is wholly immaterial whether the pleadings are or are not technically correct. If they are not, they can now be made so.

It is difficult to understand wherein there is any defect in the jurisdiction of the court to try this controversy. It is not a case presenting a claim of title on one side and of damages to be satisfied out of the property on the other. There is a claim for such damages made, but the finding that the Wallaces have title is not based upon it. Their title is found to rest upon a rescission which they had the right to elect because of fraud. The issue of damages was here involved only so far as it was necessary to prove the fact

316 PAGE BELTING CO. v. PRINCE. [77

as a basis for the exercise of the right to rescind. Both parties claim to own the stock and are therefore properly impleaded by the disinterested corporation which issued the stock and is liable for the accrued dividends to whoever is legally entitled thereto.

It is said that the bill was originally sustained upon the allegation that Prince & Co. wrongfully held the stock (*Page Belting Co.* v. *Prince*, 74 N. H. 262), and that as this allegation was false the bill should be dismissed. But the demurrer was not overruled upon this ground alone. At that time both Prince & Co. and the Wallaces had made demand upon the corporation for the dividends. The conclusion was that "since the defendants respectively made two distinct and inconsistent claims to the dividends, neither of which appears to be frivolous, manifest justice and equity require that they should litigate the matter between them for the protection of the plaintiff, who is merely an indifferent stakeholder." *Ib.* 265. Moreover, since the demurrer was overruled another claimant has appeared and been allowed to set up his alleged title to the stock.

Nor is it certain, as claimed, that payment of the dividends to Prince & Co. would have discharged the liability of the plaintiff. It had been notified of the Wallaces' claim to the dividends, as owners of the stock. The matter was then in dispute between the parties, and the stakeholder was entitled to the protection which this proceeding affords to it.

Of no more controlling importance is the claim next made by the receiver, that the amended bill shows that the plaintiff had no doubt of its right to pay the dividends to the Wallaces. It may have believed that one party had title and yet be entitled to the protection of a decree against the claim set up by the other party. The question was not whether the plaintiff believed Prince was right, or the Wallaces were right, or whether it had no opinion on the matter. As pointed out in the former decision, the important fact is that conflicting claims are made and that it does not appear that the claims are frivolous. *Farley* v. *Blood*, 30 N. H. 354; 5 Pom. Eq. Jur., s. 40, note 8. If the plaintiff erred in alleging that one party had title instead of merely stating that both claimed title, the error misled no one. But the question is not an open one. This allegation was in the bill when it was considered upon demurrer and was not deemed of vital importance. While it is true that the receiver was not a party when the former decision was

announced, yet that opinion stands like any other recent declaration of the law upon the subject.

A part of the receiver's argument on this question appears to be based upon the assumption that the amended answer of the Wallaces was made a part of the bill. The record does not show this. The original answer was adopted as a part of the complainant's allegations, but the company took no such action after the amended answer was filed. The motion that allegations of facts set out in the answer be added to the bill was made in 1906, four years before the amended answer was filed. The bill, as amended by the addition of the original answer of the Wallaces, has not been changed in any respect since the demurrer of Prince & Co. was overruled.

The receiver also urges that there is no jurisdiction over him. But he can take nothing by the mistaken impression (if he had it) that he could come into this jurisdiction and interpose technical objections, and at the same time escape being subject to the jurisdiction according to the usual course of procedure here. At his own request he was permitted to intervene, to become a party to this suit, and to claim the stock and dividends. At that time Prince & Co. had disclaimed any beneficial interest in the stock, and the case was in order for trial between the real claimants of title, the receiver on one side and the Wallaces on the other. The receiver's motion for leave to appear and litigate his claim of title, and the order granting the motion, had precisely the same effect upon the litigation as an allegation of his claim in the original bill and his appearance and answer thereto would have had.

After the decision upon the demurrer, the case was in order for a trial between Prince, claiming title as trustee under the pledge contract, and the Wallaces, claiming an absolute title to the stock. The receiver was not a party to the proceeding. There had been no attempt to make him a party or to secure a judgment which would bind him. If he had refrained from taking part in the litigation, his rights would not have been concluded by what was done in this suit; but when he intervened as a party to the suit, his situation was changed. Assuming that he may be correct in his contention that his submission to the jurisdiction was at first "temporary," the questions he then sought to raise were properly decided against him. His demurrer goes upon two grounds. The first, that the bill as amended could not be maintained, had already been decided adversely to him. The second, that the Wallaces

claimed damages only, is contrary to the fact, and the case is disposed of without considering that aspect of the contention.

If the receiver's position, that jurisdiction to render a judgment against him was lacking, had been well taken in the first instance, it could now be insisted upon. If he could at the same time become a party so far as to defeat the bill, and yet not a party so as to be compelled to litigate his claim, he did not undertake such a course. When his demurrer was overruled he did not rely solely upon his exception to the ruling. He then set up his claim of title and proceeded to litigate the same. As before pointed out, this had the same effect upon the proceedings as would have resulted from his being a party whose claim was set up in the bill and over whom the court had complete jurisdiction.

His further contention, that he did not discover the alleged deficiencies in the case until during the progress of the trial, does not alter the situation. He did not then elect to withdraw from his contest on the facts and ask the court to relieve him from the effects of what he had done. On the contrary, he continued to participate in the trial as the only opponent of the Wallaces. He introduced evidence, argued and submitted his case on the facts, and is bound by the result. If the trial court could have permitted him to withdraw upon the ground of misapprehension or deception, it did not do so. No request for such relief was made, the only suggestion along that line being that his demurrer was to have the same effect as though filed before he answered to the merits. As to his other motions and exceptions, he stands like any party over whom full jurisdiction has been obtained.

There is no error of law in the conclusion reached in the superior court that the Wallaces have title to the stock by virtue of their rescission of the contract by which title was transferred from them to Coffin & Stanton. There is no occasion to consider the claim that they have a lien upon the stock by virtue of a later transfer thereof by Coffin & Stanton to Prince & Co., as security for an obligation undertaken toward the Wallaces. The rescission of the original sale invalidates the later pledge by the vendee and renders the facts as to that transaction, and the possible rights growing out of it, wholly immaterial.

*Exceptions overruled.*

All concurred.