Rockingham, ⎱
Dec. 2, 1924. ⎰

RAYMOND A. MEARS *v.* JENNIE K. HOLMES & a.

The vendor of real estate having repudiated the contract, the vendee in possession may elect to rescind and may bring suit to recover a part payment of the purchase price, before surrendering possession of the premises, when there are special circumstances justifying the temporary retention of such possession, and no damage results therefrom to the vendor.

The strict common-law rule that the party electing to rescind must have put the other party *in statu quo* before bringing suit is not followed in this jurisdiction; the rule is that the rescinding party is required only to do what equitably he ought to do.

ASSUMPSIT, for money had and received. At the close of the plaintiff's evidence, the defendants' motion for a nonsuit was granted by *Kivel*, C. J., subject to exception. The facts are stated in the opinion.

*Frederick J. Grady* (by brief and orally), for the plaintiff.

*R. Chandler Davis* (of Massachusetts) and *Tuttle, Wyman & Starr* (*Mr. Wyman* orally), for the defendants.

PEASLEE, C. J. This is a suit to recover back a deposit made by the plaintiff upon the purchase of a farm from Mrs. Holmes, who is herein spoken of as the defendant. The question is whether there was evidence upon which the plaintiff could go to the jury. The business was conducted largely through Clapp & Company, real estate agents. The defendant had placed her farm in their hands

for sale at the price of $2,350. The price stated by the agents to Mears was $3,300. Clapp's agent went to the premises with Mears and Mrs. Holmes showed plaintiff the property. There were negotiations between them for some personal property, and it was agreed that the price therefor would be $200 in addition to the price of the farm. Mears did not know that the agents had raised the price Mrs. Holmes asked. He agreed to purchase the farm and personal property for $3,500. The agents gave him a receipt, which stated the terms of payment and that if the conditions stated therein were not accepted by the owner the deposit would be returned.

Shortly after these negotiations, the defendant told a neighbor that she had sold her place to Mears. He paid the agents $20 when the memorandum was signed, and $480 (the balance of the stipulated deposit) a few days later. These sums were paid over by the agents to Mrs. Holmes.

Mears moved onto the place about the first of November, following the negotiations in October. There was delay in clearing the title, and no deed was ever tendered to the plaintiff. November twenty-second the plaintiff wrote the defendant that certain personal property purchased was not to be found upon the place. She replied denying that she had ever done any business with him, and forbidding his disposing of any property "off the place." December sixteenth Clapp & Company wrote the plaintiff that there was delay in clearing the title, but that they expected to be ready to make the transfer in a few days.

Mears waited until February, and heard nothing more. He then consulted counsel, brought this suit on March seventh, and moved off the premises on March fifteenth. He testified that he could not leave sooner on account of the live stock.

The defendant's claim, as stated in the brief, was that there was no evidence of a contract between the parties to the suit, or of a breach by the defendant. These claims were not pressed at the oral argument, and are clearly unfounded. There is ample evidence that the defendant made the contract, and her letter of November is a flat repudiation of the agreement.

The position now relied upon is that if the plaintiff elected to rescind the contract after the defendant denied its existence, he must return what he had received before he could sue to recover what he had paid. "While by the strict common-law rule one could not rescind save by putting the other party *in statu quo,* the theory has been much broken in upon since the distinction between legal and

equitable relief has come to be largely disregarded; and the rule now in this jurisdiction is that the rescinding party is only required 'to do what equitably he ought to do.' *Mead* v. *Welch,* 67 N. H. 341, 342; *Thorpe* v. *Packard,* 73 N. H. 255. See, also, *Sipola* v. *Winship,* 74 N. H. 240." *Page Belting Company* v. *Prince,* 77 N. H. 309, 313.

The plaintiff gave up the premises shortly after bringing suit. He testified to a reason for not doing so sooner. There is no suggestion of damage to the defendant by the plaintiff's retention of possession from March seventh to March fifteenth. The defendant had her property back long before the trial. In such a situation, it is entirely clear that equity does not require that the plaintiff be turned out of court and compelled to bring a new action.

Whether, in his equitable action for money had and received, the defendant is entitled to an accounting for the use of the premises while occupied by the plaintiff, is a question which is not presented and has not been considered.

The case should have been submitted to the jury.

*Exception sustained.*

All concurred.