## DOHERTY v. BARTLETT et al. *
### No. 3052.

Circuit Court of Appeals, First Circuit.
Feb. 12, 1936.

*Rehearing denied — F.(2d) —.

Before BINGHAM and MORTON, Circuit Judges, and PETERS, District Judge.

PETERS, District Judge.

. These are separate actions brought in the District Court of New Hampshire for money had and received by Fred G. Bartlett, Leon S. Knowlton, and Joseph O. Tremblay, all of Manchester in the state of New Hampshire, against Henry L. Doherty of the city of New York and state of New York, doing business under the name and style of Henry L. Doherty & Co. In each action the plaintiff seeks to recover money paid for stocks, which it is alleged were illegally sold in New Hampshire in violation of chapter 202 of the Session Laws of 1917, entitled "An Act to protect the public against the sale of worthless securities."

The District Court found for the plaintiff in each case, and the defendant appealed. The cases were heard together in the District Court, and may be disposed of in this court in one opinion.

■ The defendant in each case filed a motion to dismiss on the ground that there was no valid service made on him. Service was made on the insurance commissioner of New Hampshire during a time when the defendant had consented to this form of service. The defendant also filed a demurrer to plaintiff's declaration in each case, claiming that the statute upon which the plaintiff relied was unconstitutional. The motion to dismiss on the ground of failure to make proper service has been abandoned, and, as counsel for the defendant in their brief do not argue the unconstitutionality of the New Hampshire act, we assume that they have abandoned this contention, as well they might, in view of the decisions of Hall v. Geiger-Jones Co., 242 U.S. 539, 551, 37 S.Ct. 217, 61 L.Ed. 480, L.R.A.1917F, 514, Ann.Cas.1917C, 643, Caldwell v. Sioux Falls Stock Yards Co., 242 U.S. 559, 37 S.Ct. 224, 61 L.Ed. 493, and Merrick et al. v. Halsey & Co., 242 U. S. 568, 37 S.Ct. 227, 61 L.Ed. 498.

MORTON, Circuit Judge, dissenting in part.

Robert J. Peaslee, of Concord, N. H., and Robert G. Dodge, of Boston, Mass. (Franklin Hollis, of Concord, N. H., on the brief), for appellant.

George L. Dillaway, of Boston, Mass. (Oscar F. Moreau, of Manchester, N. H., and Allan Robinson, of Boston, Mass., on the brief), for appellees.

The facts relating to the purchase of the stocks as found by the District Court are as follows: On February 12, 1929, the plaintiff Knowlton gave the defendant's agent, L. O. Parent, who solicited the sale in Manchester, N. H., an order for 20 shares of Cities Service common stock at 95⅜, an order for 5 shares of common stock at 99, and a check for $2,402.50, as

evidenced by receipt to that effect signed "Henry L. Doherty & Company, L. O. Parent, agent."

On July 26, 1929, the plaintiff Knowlton gave Parent an order for 200 shares of Cities Service common stock. The amount paid was $8,550. The certificates of stock were shipped from the New York office of the defendant, sight draft attached, to the Amoskeag Savings Bank at Manchester, N. H. This was done by direction of the plaintiff.

On or about July 10, 1929, the plaintiff Knowlton gave Parent an order for 50 shares of Arkansas Natural Gas Corporation, the purchase price of which was $525; and on or about July 12, 1929, he gave Parent another order for 50 shares of Arkansas Natural Gas Corporation, the purchase price of which was $600.

Knowlton has received on the above-mentioned stock the sum of $345.67 in cash dividends, which, in accordance with plaintiff's amended specifications, has been credited to the defendant. He has also received some stock dividends. The stock purchased and the stock dividends Knowlton is willing and ready to surrender.

The plaintiff Tremblay, on February 11, 1929, gave Parent a check for $937.50 for 10 shares of Cities Service common stock. Parent forwarded the order to the defendant in New York.

On July 27, 1929, Tremblay gave Parent an order for 50 shares of Cities Service stock and a check for $2,275, and took Parent's receipt for the money. Parent forwarded the order and check to the defendant's Boston office. A certificate for the 50 shares was forwarded to Tremblay at Manchester. Cash dividends have been paid on the 50 shares and credited in plaintiff's amended specifications to the amount of $90.31. The plaintiff also received stock dividends and is ready and willing to surrender the stock purchased and the stock dividends received thereon.

In each of the above transactions the orders for the purchase of stock were solicited by, and given to, Parent at Manchester in New Hampshire, and in every instance the certificates of stock were forwarded from the New York office or through the Boston office to the plaintiffs in New Hampshire. Each transaction was completed in 1929. A printed form unsigned by Henry L. Doherty, which contained the words, "Sale made to you on (date) we confirm," was issued from the New York office, or in some instances from the Boston office, and in each instance a stamp for the transfer tax was affixed in New York to the several certificates of stock before delivery. The date of the sale referred to as "confirmed" was the date on which Parent took the order.

On November 16, 1929, Fred G. Bartlett bought through agent Parent 25 shares of Cities Service stock and paid therefor the sum of $750. This transaction, however, differs from the others and disclosed the following facts: Bartlett called the Boston office of H. L. Doherty & Co. by telephone for information concerning some stock previously purchased. The call was referred to Parent, who was then present in the Boston office. In the conversation over the telephone, Parent urged Bartlett to buy more stock, and the above-mentioned 25 shares were then ordered. A check was mailed by Bartlett to the Boston office, and the stock was delivered and accepted by Bartlett in New Hampshire in November, 1929, being sent by registered mail. As in the case of sales with Knowlton and Tremblay, the stamps for the transfer tax were affixed to the certificates before delivery.

Sections 6, 17, 18, and 38 of chapter 284 of the Public Laws of New Hampshire provide as follows:

"6. No dealer in securities shall, in this state, by direct solicitation or through agents or salesmen, or by letter, circular or advertising sell, offer for sale or invite offers for or inquiries about securities unless registered as a dealer under the provisions of this chapter."

"17. No salesman or agent shall in this state, in behalf of any dealer, sell, offer for sale or invite offers for or inquiries about securities unless registered as a salesman or agent of such dealer under the provisions of this chapter."

"18. Upon written application by a registered dealer, accompanied by a registration fee of ten dollars for each person, the commissioner shall, if he is satisfied that they are suitable persons, register, as agents or salesmen of such dealer, such persons as the dealer may request."

"38. Whoever violates any provision of this chapter, or knowingly files with the commissioner or furnishes to him any false or misleading statements or information, shall be fined not more than two thousand dollars, or imprisoned not more than six months, or both."

It is admitted that, while Henry L. Doherty was duly registered in New Hampshire as a dealer during the year 1929, Parent, who solicited each of the plaintiffs Knowlton and Tremblay in New Hampshire was not registered by the defendant in New Hampshire under section 18 of the act as a salesman or agent of the defendant during the year 1929, when all the sales here involved were made. The names of two agents other than Parent were forwarded by the defendant for registration in November, 1928, for the year 1929, in accordance with the provisions of section 18 of the act, together with the application of Henry L. Doherty & Co. as a dealer under section 6, with the proper fees. Later, in November, the application of one of the agents was withdrawn, but the fee, in accordance with practice in the insurance commissioner's office, was not returned.

No application was ever made by the defendant for the renewal of the registration of Parent as a salesman or agent in New Hampshire for the year 1929. He was for a part of the year 1928 and the first half of the year 1929 working from the New York office, and was later transferred to the Boston office, which may have accounted for the failure to renew his registration as a salesman in New Hampshire during the year 1929.

The District Court was not obliged to consider, and it has no bearing on the validity of the sales, whether he was qualified to register, or whether the failure of the defendant to register him as his agent for that year was due to an oversight. The statute makes no exceptions in such cases. Chattanooga National Building & Loan Association v. Denson, 189 U.S. 408, 416, 23 S.Ct. 630, 47 L.Ed. 870; Johnson v. Railroad, 83 N.H. 350, 362, 143 A. 516, 61 A.L.R. 1178. Whatever may have been the reason, he was not registered as a salesman or agent in New Hampshire during the year in question, and any sales, solicitations, or offers of sale or transactions by him in connection with the sale of stocks for the defendant during that year were severely penalized under section 38 of the New Hampshire statute.

The District Court found as facts that the defendant knew or should have known that no registration for Parent as the defendant's salesman in New Hampshire had been applied for or had been issued, and that no payment therefor had been made; that the defendant, Henry L. Doherty, knew the requirements of the New Hampshire laws respecting the sale of securities, because in previous years, with respect to Parent and other agents, he had complied with the same.

While chapter 284 of the Public Laws of New Hampshire does not in terms declare all contracts made in violation of this chapter to be void, it is the general rule that, where a penalty is imposed upon one of the parties participating in such bargains or sales, the transaction is illegal and void. 6 R.C.L. p. 702, § 108; Kneeland v. Emerton, 280 Mass. 371, 380, 183 N.E. 155, 87 A.L.R. 1; Randall v. Tuell, 89 Me. 443, 446, 36 A. 910, 38 L.R.A. 143; Lewis v. Welch, 14 N.H. 294; Albertson & Co. v. Shenton, 78 N.H. 216, 98 A. 516.

Section 580 of the Restatement of the Law on Contracts provides that:

(2) Legislative intent to prohibit the formation of a bargain, or an act essential for its performance, may be manifested by

(b) Making the formation of the bargain or the performance thereof a crime, or

(c) Imposing a penalty for the formation of the bargain or for doing any act that is essential for the performance thereof, or

(e) Other terms of a statute interpreted in the light of the purpose of its enactment.

While the transactions took place in 1929, these actions were not brought until April 12, 1934. No evidence was introduced as to when the plaintiffs first learned that Parent was not duly registered as a salesman of the defendant during the year 1929.

Many exceptions were taken at the trial to the rulings of the District Judge, and assignments of error were filed based on the exceptions. The defendant, however, now relies only on the following:

"(1) The plaintiffs are in no event entitled to rescind sales made so long before the attempted rescission."

"(2) The fact that Parent was not registered does not entitle the plaintiff to recover."

"(3) The violation of the New Hampshire statute can in no event operate to invalidate the completed sale."

The defendant's first assignment of error on which he relies, viz. that the plain-

tiffs are in no event entitled to rescind sales "made so long before the attempted rescission," is based on estoppel or ratification. He contends that one entitled to rescind a contract must exercise the right within a reasonable time after he learns of the facts entitling him to that right; otherwise he cannot recover.

■ This is true as to voidable contracts or where a contract is void as between the parties, and in some states the usual conditions of rescission are applied, as essential to maintenance of an action, even in cases where the contract is void as against public policy, viz. that the party seeking to recover must first return any consideration received and any benefit derived therefrom before bringing action, Cummings v. Hotchkin Co. (Mass.) 197 N.E. 473; Kneeland v. Emerton, 280 Mass. 371, 183 N.E. 155, 87 A.L.R. 1; but under the decisions in New Hampshire it is sufficient if he offers to return the stocks and any benefits derived therefrom during the trial and before judgment, Mears v. Holmes, 81 N.H. 401, 128 A. 9; Kenalos v. Greene Co., 81 N.H. 426, 128 A. 335. The weight of authority and reason appears to hold no rescission is essential to the right of recovery where the contract is void. Where a transaction is void as against public policy, there is nothing to rescind. Day v. McAllister, 15 Gray (Mass.) 433, 434. Any agreement in the form of a contract under such circumstances has no existence in the eyes of the law. The law annuls it. Property or money held under such a transaction by one of the parties to such an agreement may be recovered in New Hampshire by the other party, if not in pari delicto, without offering to rescind, if not barred by the statute of limitations, and he offers to restore any consideration received by him during the trial and before judgment is entered. Mears v. Holmes, supra; Kenalos v. Greene Co., supra.

The bringing of the action amounts to a repudiation of the transaction as far as any rescission is required. At least, in New Hampshire a tender of the property received under the void contract is sufficient if made at the time of trial, which was done in these cases. The defendant did not plead estoppel, nor does the record disclose facts that would estop the plaintiffs, Knowlton and Tremblay, from recovery.

In Karamanou v. Greene Co., 80 N.H. 420, 124 A. 373, 374, the court said:

" 'Where contracts or transactions are prohibited by positive statutes for the sake of protecting one set of men from another set of men—the one, from their situation and condition, being liable to be oppressed or imposed upon by the other—there the parties are not in pari delicto; and, in furtherance of these statutes, the person injured, after the transaction is finished and completed, may bring his action and defeat the contract.' Lord Mansfield, Browning v. Morris, 2 Cowp. 790, quoted in Edgerly v. Hale, 71 N.H. 138, 147, 51 A. 679. The statute under consideration was passed for the protection of men such as the plaintiff. The sale only is penalized, not the purchase. If the plaintiff has paid money or other thing to the defendant under the prohibited contract, the defendant cannot set up a title to such money or thing under the contract made in violation of law, and the plaintiff will be entitled to recover without proof of the defendant's bad faith or the lack of value in the securities if he returns them."

In Kenalos v. Greene Co., 81 N.H. 426, 128 A. 335, 336, the court said:

"The exception to the refusal to direct a verdict for the defendant in each case on the grounds common to all of them, that Karamanou v. Greene Co., 80 N.H. 420, 124 A. 373, should be overruled, that no plaintiff showed any damage sustained in the purchase of his stock, and that no plaintiff before bringing suit made a tender of his stock to the defendant either with or without the requirement of returning his payment at the time, is also to be overruled. No reason being presented or suggesting itself why Karamanou v. Greene Co. should be overruled, it is affirmed. It holds it to be immaterial what value the securities have when bought or later. While it does not go so far as to hold that a plaintiff may recover if he does not return the securities, it does not hold that a tender of them must be made before suit is brought. It is now the law that if a rescinding party does what he equitably should, it is a sufficient substitute for restoring the previous situation. Mears v. Holmes, 81 N.H. 401, 128 A. 9, and cases cited. Since no injustice is done the defendant if it receives back the stocks by the time it satisfies the judgments, and since there is adequate procedure to secure their return on such a basis, tender, prior to bringing suit or prior to or during the trial, is not equitably required. An

order deferring entry of judgments until the stocks duly assigned are deposited gives the defendant all needed protection in such respect."

In Mears v. Holmes, 81 N.H. 401, 402, 128 A. 9, the court said:

"The position now relied upon is that if the plaintiff elected to rescind the contract after the defendant denied its existence, he must return what he had received before he could sue to recover what he had paid. 'While by strict common-law rule one could not rescind save by putting the other party in statu quo, the theory has been much broken in upon since the distinction between legal and equitable relief has come to be largely disregarded; and the rule now in this jurisdiction is that the rescinding party is only required "to do what equitably he ought to do." Mead v. Welch, 67 N.H. 341, 342 [39 A. 970]; Thorpe v. Packard, 73 N.H. 235 [60 A. 432]. See, also, Sipola v. Winship, 74 N.H. 240 [66 A. 962].' Page Belting Co. v. Prince, 77 N. H. 309, 313, 91 A. 961, 963."

This appears to be the law in other jurisdictions.

In Mary A. Colby v. Title Insurance & Trust Co., 160 Cal. 632, 644, 117 P. 913, 918, 35 L.R.A.(N.S.) 813, Ann.Cas.1913A, 515, the California Supreme Court said:

"But the doctrine of estoppel by conduct or by laches, or even ratification, has no application to a contract or instrument which is void because it violates an express mandate of the law or the dictates of public policy. Such a contract has no existence whatever. It has no legal entity for any purpose, and neither action nor inaction of a party to it can validate it; and no conduct of a party to it can be invoked as an estoppel against asserting its invalidity. The authorities are uniformly agreed on this principle, and the following cases, out of a number, are selected on this point, because they involve contracts which, like the instruments alleged by plaintiff to have been executed for an illegal consideration, were declared void as against public policy, and where it was held that the plea of estoppel as against such contracts could not be asserted. Brown v. First Nat. Bank, 137 Ind. 655, 37 N.E. 158, 24 L.R.A. 206; Langan v. Sankey, 55 Iowa, 52, 7 N.W. 393; Wheeler v. Wheeler, 5 Lans.(N.Y.) 355; Robinson v. Patterson, 71 Mich. 141, 39 N.W. 21; Hardy v. Smith, 136 Mass. 328; Stanard v. Sampson, 23 Okl. 13, 99 P. 796; McCormick Harvesting Mach. Co.

v. Miller, 54 Neb. 644, 74 N.W. 1061; Henry v. State Bank of Laurens, etc., 131 Iowa, 97, 107 N.W. 1034."

In Brown v. First National Bank, 137 Ind. 655, 672, 37 N.E. 158, 164, 24 L.R.A. 206, the court said:

"The contention of counsel that the appellee, having received the benefit of the contract, is estopped to defend against it on the principle that a corporation which has such benefit is estopped to assert that it had no power to contract, is unsound, as applied to the case at bar. The rule suggested applies to cases where private rights alone are concerned, while in contracts void as against public policy the public is interested. The public concern cannot be made a matter of private bargain. * * * It cannot be rendered valid by invoking the doctrine of estoppel."

In Wheeler v. Wheeler, 5 Lans.(N.Y.) 355, 357, the court said:

"The defendant's counsel contends that, even if the agreement was void, as against public policy, still it was competent for the parties to ratify it after the sale and purchase; and that the plaintiff having received from the defendant his share of the purchase price, or a portion thereof, is estopped from alleging the illegality of the agreement until he refunds, or offers to refund, the money received. But the principle of estoppel does not apply to an agreement which the law holds to be void, as against public policy. The ratification of such a contract is as nugatory as the contract itself."

In Rhines v. Skinner Packing Co., 108 Neb. 105, 108, 187 N.W. 874, 875, the court said:

"The sale, if a Missouri contract, seems to be void when tested by the public policy of Missouri, as declared by the judiciary of that state in enforcing statutes of this kind. Booth v. Scott, 276 Mo. 1, 205 S.W. 633; Amalgamated Zinc & Lead Co. v. Bay State Zinc Mining Co., 221 Mo. 7, 120 S.W. 31, 23 L.R.A.(N.S.) 492. Many other courts have taken the same view of similar statutes. 14A C.J. 1296, sec. 4004, note 95; Edward v. Ioor, 205 Mich. 617, 172 N.W. 620, note in 15 A.L.R. 256, 262.

"To defeat the action defendant argues that the sale was a Nebraska contract unaffected by the laws of Missouri. In this connection it is asserted that the stock was obtained in Omaha, Nebraska, that the note for the purchase price was accepted there,

and that it was there the final act of approving the sale was performed. This position is clearly untenable. Defendant sent its agents to Excelsior Springs, Missouri, to negotiate the sale. The representations and inducements resulting in the purchase were made there. It was there that the subscription for the stock and the purchase money note were signed. It was there the stock was received by plaintiff and accepted by him. If the concluding act in the negotiations is an important factor in determining the situs, as argued by defendant, the delivery in Missouri and the acceptance of the stock there should not be ignored. Defendant cannot evade the consequence of its unlawful acts in Missouri on this ground or thus take from plaintiff the protection of the Missouri statute. The mere attempt of defendant to make the sale in Missouri, without complying with the Missouri statute, was an unlawful act culminating in the void contract which plaintiff is attempting to rescind. The nonsuit cannot be justified on the ground that the sale was a Nebraska contract. It was a Missouri transaction and should be litigated as such. * * *

"A proper tender was made at the trial and, if the plea of tender is wanting in any respect, the petition is still amendable to conform to the proof—an unnecessary formality under the circumstances at this stage of the litigation. In any event a timely, perfect tender in every respect would have been unavailing. It would have been rejected and the attitude of defendant so shows."

In Westerlund v. Black Bear Mining Co. (C.C.A.) 203 F. 599, 611, the court said:

"Courts take judicial cognizance of the fact that Legislatures use the word 'void' in statutes in the sense of utterly void so as to be incapable of ratification, and in the sense of voidable by those alone whose rights are infringed without express discrimination, so that resort must be had to settled rules for the interpretation of statutes in each case to determine in which sense the Legislature intended to use it. One of these rules is that an act declared to be void by statute which is malum in se or against public policy is utterly void and incapable of ratification, but an act or contract so declared void, which is neither wrong in itself nor against public policy, but which has been declared void for the protection or benefit of a certain party, or class of parties, is voidable only and is capable of ratification by the acts or silence of the beneficiary or beneficiaries."

In Cecil De Mille Productions v. Woolery (C.C.A.) 61 F.(2d) 45, 49, the court quoted with approval the following from Tatterson v. Kehrlein et al., 88 Cal.App. 34, 48, 49, 263 P. 285:

"The Corporate Securities Act was passed for the protection of the public and 'every case from every court recognizes that when a statute has been made for the protection of the public a contract in violation of its provisions is void.' Payne v. DeVaughn, 77 Cal.App. 399, 403, 246 P. 1069, 1071. * * * 'This is one of the distinctions between void and voidable contracts. The doctrines of estoppel by contract and ratification have no application to a contract which is void because it violates an express mandate of the law or the dictates of public policy. Such a contract has no legal existence for any purpose and neither action nor inaction of a party to it can validate it and no conduct of a party to it can be invoked as an estoppel against asserting its invalidity.'"

Also see Langan v. Sankey, 55 Iowa, 52, 7 N.W. 393; Cross v. Bell, 34 N.H. 82; Randall v. Tuell, 89 Me. 443, 446, 447, 36 A. 910, 38 L.R.A. 143; First State Bank of Pineville v. Wilson, 246 Ky. 635, 55 S. W.(2d) 657; Allen v. Deming, 14 N.H. 133, 40 Am.Dec. 179; Garey v. Huff Co., 135 Misc. 138, 238 N.Y.S. 38.

In the cases of McCallum v. McIsaac, 159 Tenn. 655, 21 S.W.(2d) 392, and in Miller v. Stuart, 69 Utah, 250, 253 P. 900, cited by the defendant, the language of the statute in these states differs from that of New Hampshire, and these cases do not support the contention of the defendant.

If, as the New Hampshire decisions hold, a party injured is not required to tender back the property or consideration received, before bringing suit to recover, and, in case of a contract prohibited by statute and void as against public policy, the principle of estoppel or ratification does not apply to such a transaction, we think the plaintiffs were within their rights in bringing these actions within the period of limitation of such actions. 1 C.J. § 400, p. 1153.

With reference to the second assignment of error ruled on, that "The fact that Parent was not registered does not entitle the plaintiff to recover," counsel for de-

fendant urges that the New Hampshire decision in Karamanou v. Greene Co., supra, did not go so far as to hold that a sale of stock by an unregistered salesman entitles the purchaser to recover the amount paid.

The Karamanou Case was a sale by an unlicensed dealer and was affirmed in the Kenalos Case. It matters not whether the unlawful sale is made by the dealer, or the foundations of the sale are entered into by an unregistered salesman, there is a violation of the act, and a right of recovery of the purchase price clearly results from the decisions in these two cases. It was so held in Kneeland v. Emerton, 280 Mass. 371, 380, 183 N.E. 155, 87 A.L.R. 1. See Albertson & Co. v. Shenton, 78 N.H. 216, 98 A. 516.

■ The purpose of the so-called Blue Sky Laws is to prohibit sales or offers to sell or solicitation of sales of securities, except by a registered dealer or salesman. If an unregistered salesman or agent sold or took orders for stock in violation of such statutes and his illegal acts cannot be ratified as a valid contract by his principal, a purchaser, on offering to return his stock and any benefit received therefrom, is entitled to recover the purchase price. It is quite evident, too, in these cases that a prior offer to return would have been futile, which the law does not require.

If Parent had authority to make a binding contract, he undertook in each case to make one in New Hampshire; but, if he made a contract for the sale of stocks subject to the approval of his principal, his acts as agent, being contrary to the laws of New Hampshire and against the public policy of that state, were not capable of ratification by his principal. The printed slips admitted as exhibits show that it was "sales" made by Parent in New Hampshire which the defendant undertook to confirm. They did not purport to constitute a new contract of sale independent of the acts of Parent, but to confirm his acts, which the authorities agree were not capable of ratification. 13 C.J. §§ 452, 453, 454, pp. 506, 507.

"As the contract was not a later independent act, but grew immediately out of the illegal solicitation, and was part of the same transaction, being inseparably tied to it by the use of the application blank illegally distributed, the contract was tainted with the illegality. Armstrong v. Toler, 11 Wheat. 258, 6 L.Ed. 468." Bothwell v. Buckbee-Mears Co., 275 U.S. 274, 277, 48 S.Ct. 124, 125, 72 L.Ed. 277.

■ Acts by an agent contrary to the public policy of one state cannot be made the basis of a valid contract by ratification in another state. The authorities, supra, support this view, and we think are in accordance with reason and the purpose and intent of statutes of this nature. Otherwise there is no prohibition against a salesman or agent of a dealer in one state using the high pressure salesmanship of Parent and advising prospective purchasers, who are without adequate knowledge of the value of the stocks offered, to borrow and buy all they could. These statutes were enacted to prevent the flooding of a state with worthless stocks, or stocks of doubtful value, which these proved to be. If such statutes can be thus evaded, the intent of the Legislature passing them is easily circumvented, and the purpose of such legislation rendered ineffective as against dealers in worthless securities.

The defendant relies on the case of Doherty v. McAuliffe (C.C.A.) 74 F.(2d) 800, but in this case the dealer and broker were both registered and could legally sell the stock. The only objection was that the installment contract of sale was not approved by the commission as provided by the statute. The contract had been completed. The violation of the statute in this case did not enter into the essence of the contract of sale and, when completed, was not within the prohibition of the statute.

■ As to the third assignment of error ruled on, that "the violation of the New Hampshire statute cannot operate to invalidate a completed sale": If the contract of sale is void and cannot be ratified, there is no valid completed sale, and the plaintiffs are not barred from maintaining an action for money had and received and recovering the consideration paid. The entire transaction is void. "At common law, 'a right cannot be founded upon a violation of law, and hence no legal right can grow out of a contract promoting or intending to promote such a violation.'" Karamanou v. Greene Co., supra, 80 N.H. 420, at page 422, 124 A. 373, 374; Bothwell v. Buckbee-Mears Co., supra; Edgerly v. Hale, 71 N.H. 138, 51 A. 679. When a plaintiff has paid money or other thing to the defendant under a prohibited contract, the defendant cannot set up title to such money or thing under a contract made

in violation of law, and the plaintiff is not required to prove the defendant's bad faith or lack of value in the securities.· In furtherance of such statutes as that of New Hampshire, the person injured may bring his action after the transaction is completed and defeat the same. Karamanou v. Greene Co., supra, 80 N.H. 420, at page 423, 124 A. 373; Bauer v. Bond & Goodwin, Inc., 285 Mass. 117, 120, 188 N.E. 708.

The foregoing applies to the actions brought by the plaintiffs Knowlton and Tremblay, and as to them the judgment of the District Court must be affirmed.

As to the action brought by Bartlett, the facts are different. The sale of stock in this instance resulted from a telephone communication by him from Manchester, N. H., with the Boston office concerning another and prior purchase of stock. This call was turned over to Parent, who, during the conversation, prevailed on Bartlett to purchase more Cities Service stock. The solicitation and offer to sell the stock was made by Parent in Massachusetts, and, while the consummation of the transaction was the acceptance by telephone by Bartlett in Manchester, Restatement of the Conflict of Laws, § 325, we do not think the effect of this conference over the telephone was a violation of the New Hampshire statute. No act of Parent, either of solicitation or offer of sale, took place in New Hampshire. No contract of sale, even if Parent was authorized to make a contract of sale, was entered into by him while in New Hampshire. He violated no provision of the New Hampshire law by soliciting a sale in Massachusetts, where he was duly registered and authorized to solicit a sale of securities as a representative of the defendant, Doherty. All acts in New Hampshire in completing a sale in this case were by the plaintiff and not by the defendant or his agent, Parent.

The entry in the Knowlton Case and in the Tremblay Case will be: Judgment of the District Court is affirmed, with costs.

The entry in the Bartlett Case will be: Judgment of the District Court reversed; judgment to be entered for the defendant, with costs.

MORTON, Circuit Judge (dissenting).

I regret that in the Knowlton and Tremblay Cases I am unable to agree. The decision seems to me inconsistent with the view which we took of a very similar question in Doherty v. McAuliffe (C.C.A.) 74 F.(2d) 800; and I do not see any difference between the law of Massachusetts and of New Hampshire on this point which requires a different result. Indeed, a Massachusetts case, Kneeland v. Emerton, is relied on in the majority opinion. The rule laid down, that a contract negotiated or arranged by an unlicensed agent is utterly void, is at variance with the decisions which we referred to and approved in the McAuliffe Case and with the leading case, Bowditch v. Insurance Co., 141 Mass. 292, 4 N.E. 798, 55 Am.Rep. 474. If consistently applied, it will lead, as it does in this case, to very unjust results.