## First State Bank of Pineville v. Wilson. Same v. Taylor.

(Decided Oct. 21, 1932.)

(As Extended Dec. 16, 1932.)

JAMES H. JEFFRIES, CLEON K. CALVERT, and JAMES G. BRUCE for appellant.

N. R. PATTERSON for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Affirming in part and Reversing in part.

Dr. Edward Wilson brought an action in the Bell circuit court against the First State Bank of Pineville and its president, George H. Reese, alleging in his peti-

tion these facts: The bank and George H. Reese were engaged in the banking business, and in addition thereto they were engaged in dealing in stocks and bonds and acting as brokers for the purchase and sale of stocks, and did same for a reward and a commission thereon. He purchased of them nine $1,000 collateral trust bonds, issued by the Central Securities Company of Asheville, N. C., and when he so purchased them the defendants were the brokers and agents of the said Central Securities Company in selling these bonds and were handling same on a commission as broker, and represented to him that the bonds were a high-class security of improved integrity, and were secured by the personal liability of said trust company and by real estate mortgages, and were guaranteed by the Maryland Casualty Company and the United States Fidelity & Casualty Company of Baltimore, Md., and that relying on these assurances as to the security of the bonds and their approved value, he paid the defendants for the bonds par value and accrued interest; that the trust company was insolvent; that the bonds were not guaranteed in any way or secured by mortgage; and that they were put on sale as a scheme, artifice, and device by the defendants and the Central Securities Company to defraud the public and the plaintiff, who might buy any of the bonds, and for the purpose of working an imposition on the plaintiff; and that the sale of the bonds to him was done for the fraudulent and deceitful purpose of obtaining his money without any consideration. He also alleged that at the time of the sale of the bonds to him neither of the defendants had ever been authorized or licensed under the Kentucky Blue Sky Law, sec. 883e-1 et seq., Kentucky Statutes, Acts of 1926, p. 210, c. 76.

Dr. C. O. Taylor brought a like action against the defendants making the same allegations as to the sale to him of four $1,000 bonds, issued by the same company. The defendants filed answer in each case denying the allegations of the petition; the two cases were heard together. The circuit court held that the sales were made in violation of the Blue Sky Law and were void. But as one sale had been made more than two years before the action was brought there could be no recovery for it. Judgment was entered against the bank in favor of Dr. Wilson for $8,000, and in favor of Dr. Taylor for $4,000 and interest. No judgment was entered against George H. Reese. Each party

prayed an appeal, which was granted. The bank prosecuted its appeal regularly. No appeal has been prosecuted by the plaintiffs, and no cross-appeal has been granted here, so the only question before the court is the correctness of the judgment against the bank.

Dr. Taylor testified to these facts: He received a check for $6,300, which he deposited in the bank, and the president asked him what he was going to do with the money and said, "I have got some guaranteed bonds that I can sell you and you can save money. The money will be perfectly safe, and is guaranteed by the property and a bank and the Maryland Casualty Company." He said, "take this statement and look it over," and gave the doctor a folder. Dr. Taylor did not examine it, and in a day or two later he went into the bank and the president said, "Dr. what about those bonds? Are you going to let me sell you some? You had better buy these bonds," and he said "Well, I will take $4,000 of them." On the same day the bank wrote to the trust company at Asheville, this letter:

"Please enter our order for $4,000 bonds 6 year maturity and attach to draft and register in the name of Charles O. Taylor, Pineville, Ky. Yours Truly."

The trust company mailed the bonds to the bank with a statement accompanying it, showing that the bonds were sold to Dr. Taylor for $4,108.66. The bank paid the trust company this amount by sending the money to its correspondent in Cincinnati; Dr. Taylor gave the bank a check for the amount, which was charged to his account. When the trust company got notice that the bonds had been paid for, it sent the bank a check for $80, which was its commission on the sale of the bonds, payable by the trust company to the bank.

George H. Reese testified that the bank got 1 per cent. on three years' maturities; 2 per cent. on five years, and three per cent. on ten years' maturities. The bank received $270 as its commission on the Wilson bonds. Reese said that Dr. Taylor had been buying stocks on the margin and lost, and he thought that it would be a good idea for him to buy some bonds, and for that reason made the suggestion. All he knew about the bonds was from the circular that he gave to the doctor. He does not deny telling him

that the bonds were secured as stated above, and that he then believed that was so, and in fact he bought $3,000 of the bonds himself and he only made the suggestion to Dr. Taylor as a friend, and got nothing from him for the transaction.

The facts as to the $9,000 bonds purchased by Dr. Wilson are practically the same except these purchases ran over several years and were made at different times as the doctor had a balance in bank. The trust company failed a few months later, and the fact was that though the bonds purported on their face to be secured as above stated they were not secured in any way, and the certificate to this effect on the bond was a falsehood. Later the company failed, and the officer who had issued the bonds and made the certificate was sent to the penitentiary. Neither the bank nor its president had any authority under the Blue Sky Law to sell the bonds or deal in them, and the first question in the case is, Were the transactions within that statute? Among other things it contains these provisions (Ky. Stat. sec. 883e-2 subsecs. 4, 6, and secs. 883e-10, 883e-18, 883e-30):

> " ' Dealer' shall include every person other than a salesman who in this State engages either for all or part of his time directly or through an agent in the business of selling any securities whether exempt or not exempt issued by another person or purchasing or otherwise acquiring such securities from another for the purpose of reselling them or of offering them for sale to the public, or offering, buying, selling or otherwise dealing or trading in securities as agent or principal for a commission or at a profit.''

1926 Acts, p. 211, c. 76, sec 2, subsec. 4.

> " 'Salesman' shall include every natural person, other than a dealer, employed or appointed or authorized by a dealer, or issuer to sell securities in any manner in this State.''

Section 2, subsec. 6.

> "Registration of Dealers and Salesmen. No dealer or salesman shall engage in business in this State as such dealer or salesman or sell any securities * * * exempted in section 3 of this act, except in transactions exempt under section 4 of this act,

unless he has been registered as a dealer or salesman in the office of the commissioner pursuant to the provisions of this section."

Section 10.

"Every sale or contract for the sale made in violation of any of the provisions of this act shall be voidable at the election of the purchaser and the person making such sale or contract for sale and every director, officer or agent of or for such seller who shall have participated or aided in any way in making such sale shall be jointly and severally liable to such purchaser in any action at law in any court of competent jurisdiction in the county where the contract was made or in which the plaintiff resides, upon tender to the seller of the securities sold or of the contract made for the full amount paid by such purchaser."

Section 18.

"No trick, device, subterfuge or pretense shall be allowed to evade the operation or defeat the purpose of this law, and its provisions shall be liberally construed in order that the purpose and intention of the act to protect the public from fraud, deceit, and imposition in the sale of the securities referred to in this act, may be carried out."

Section 30.

It is earnestly insisted for appellant that as the order for the bonds was received in Asheville, N. C., and the order was accepted there and the bonds mailed as directed in the order, the sale was made in North Carolina, and the Kentucky Statute has no application to it; but these are not all the facts in the case. The authorities relied on would apply if the letter had been written by the purchaser of the bonds and the bonds had been mailed to him, but the bonds were mailed to the bank and in the order for the bonds, made by the bank, the trust company was directed to draw a draft on Dr. Taylor or Dr. Wilson, as the case might be. The bonds were mailed in a letter to the bank with a statement showing the amount that was to be paid and a draft on the purchaser. The purchaser had to accept the bonds and pay the draft in Kentucky before

the title passed. Not only so, very clearly the bank was acting as the agent of the trust company in selling these bonds and was receiving a commission from it for its services. By the express terms of the statute a dealer shall include every person "offering, buying, selling or otherwise dealing or trading in securities as agent or principal, for a commission or a profit." If these bonds had been at the bank at Pineville at the time the negotiation between the president of the bank and Dr. Taylor or Dr. Wilson took place, very clearly the transaction would have been within the statute. But the fact that the bank had to order the bonds from the trust company and complete the transaction when the bonds came in no manner affects the substance of the transaction which occurred in Kentucky. If the bank not having the bonds on hand had ordered them sent to it by the trust company in order to carry out its arrangement with Dr. Taylor and Dr. Wilson, clearly the statute would apply. But this was in substance what was done. By the terms of the statute no device or mere form may defeat its operation. To say that the statute does not apply to such facts as we have here would be to simply open the door to destroy the application of the statute.

It is insisted that the Kentucky statute cannot be held applicable to any of the transactions in question as this would be to impose a restriction on interstate commerce. But this contention was rejected in Hall v. Geiger-Jones Co., 242 U. S. 539, 37 S. Ct. 217, 61 L. Ed. 480, L. R. A. 1917F, 514, Ann Cas. 1917C, 643; Caldwell v. Sioux Falls Stock Yards Co., 242 U. S. 559, 37 S. Ct. 224, 61 L. Ed. 493; Merrick v. N. W. Halsey & Co., 242 U. S. 568, 37 S. Ct. 227, 61 L. Ed. 498. See, also, Edwards v. Ioor, 205 Mich. 617, 172 N. W. 620, 15 A. L. R. 256 and notes.

It is also insisted that the bank did not have corporate power to act as a broker and therefore is not liable for what its officers did. But in section 598b-1, Kentucky Statutes, it is provided:

"That all banks created, organized and doing business under the laws of the Commonwealth of Kentucky * * * shall be authorized, permitted, and are hereby given the right * * * to act as agent or attorney in fact for the transaction of any business."

In addition to this, section 883e-10, Kentucky Statutes, expressly provides how banks acting under that act may give bond. It is clear therefore that the transactions were within the powers of the bank.

In the original petition Dr. Wilson sought to recover the money paid on the ground of fraud and deceit. By an amended petition he made the allegation as to each of the bonds therein named that the bank made the transaction without authority to act under the Blue Sky Law, but in this amended petition two of the bonds, Nos. 300 and 388, were omitted and no allegation was made as to the bank's lack of authority at the time of these transactions. In this amended petition the right to recover on the ground of fraud and mistake as to any of the bonds is withdrawn and the only ground of action left is under the Blue Sky Law. There being no allegation as to bonds 300 and 388 bringing these transactions within the Blue Sky Law, the judgment as to these two bonds was unwarranted.

The judgment in favor of Dr. Wilson is reversed, and on the return of the case he will be allowed to amend his petition.

The judgment in favor of Dr. Taylor is affirmed.