## First State Bank of Pineville v. Slusher.

(Decided Jan. 12, 1937.)

GOLDEN & LAY and JAMES H. JEFFRIES for appellant.

N. R. PATTERSON for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

One June 12, 1929, Mrs. Axie Slusher purchased from the First State Bank of Pineville, Ky., through its president, George R. Reese, six $1,000, 6 per cent. collateral trust gold bonds, series B, numbered 341-346, inclusive, which had been issued by the Central Securities Company of Asheville, N. C., for which she paid the sum of $6,000. The interest on the bonds was payable semi-annually on the 1st day of February and the 1st day of August in each year, and she was paid $30 interest due on each bond on August 1, 1930, but received no further payments.

On March 30, 1934, she instituted this action against the First State Bank of Pineville and George H. Reese, setting up the foregoing facts and alleging that at all times mentioned, the bank had been engaged in banking business, and in addition engaged in dealing in stocks and bonds and acted as broker, agent, and seller to various purchasers of stock, receiving commissions on stocks and bonds sold; that when she purchased the bonds from defendant it was broker and agent of the Central Securities Company and the Central Bank & Trust Company of Asheville, N. C., in selling various bonds, particularly $190,000 of bonds sold in Harlan, Bell, and Knox counties; that they repre-

sented to her that the bonds which she purchased were high-class securities of approved value and integrity, secured by the personal liability of the Central Securities Company and the Central Bank & Trust Company and by real estate mortgages, the principal and interest of which had in its entirety been guaranteed by the Maryland Casualty Company and the United States Fidelity & Guaranty Company of Baltimore, Md.; that the bonds bore a trustee's certificate or legend which made similar representations which were false; that she relied on these assurances and representations and was induced thereby to and did purchase the six bonds; that on February 1, 1931, the Central Securities Company and the Central Bank & Trust Company defaulted in payment of interest on the bonds and the bank was closed and suspended business and were both insolvent and had no funds out of which to pay their creditors, depositors, and stockholders, including plaintiff. She alleged that the representations made to her concerning the bonds when she purchased them were utterly false, and that when she discovered the bonds were worthless and of no value she approached defendant and offered to surrender the bonds and demanded payment of her money; that at the time of the sale of the bonds to her neither of the defendants had been authorized to vend, sell, or offer for sale bonds in the state of Kentucky; nor had either of them been licensed so to do pursuant to what is known as the Blue Sky Law of Kentucky (Acts 1932, c. 17 [Ky. Stats. sec. 165a-1 et seq.]); and that no license had been taken out by either of them to engage in the sale of bonds or securities in this state.

On September 21, 1934, she filed an amended and supplemental petition in which she reiterated practically all of the allegations of the original petition but without any reference to violation of the Blue Sky Law; and later by a second amended petition she alleged that she did not discover the fraudulent character of the bonds she had bought until February 1, 1931. In addition to a traverse and other defenses, the defendants interposed a plea of limitation:

The conclusions we have reached render it unnecessary to enter into further detail concerning the allegations of the petition as amended and the answer and other pleadings.

· On final hearing it was adjudged that the petition as against George H. Reese be dismissed and that the contract by which plaintiff purchased the bonds be rescinded, the bonds returned to the First State Bank, or it be privileged to withdraw them from the record at any time it might desire; that plaintiff recover of the First State Bank the sum of $6,000 with interest from August 1, 1930, and it is appealing.

Section 42, c. 17, Acts 1932 (section 165a-41, Carroll's Kentucky Statutes 1936 Edition), which is similar to or a re-enactment of section 18, c. 76, Acts 1926, and Kentucky Statutes, sec. 883e-18 (Carroll's 1930 Edition), which is a part of what is known as the Blue Sky Law, provides in substance that every sale or contract made in violation of any provision of that act shall at the election of the purchaser be voidable and that the person making the sale and every director, officer, and agent of the seller who shall participate in or aid in any way in making the sale shall be jointly and severally liable to the purchaser; and respecting the time within which an action to avoid such sale may be brought it is further provided:

"Provided, that no action shall be brought for the recovery of the purchase price, after two years from the date of such sale or contract for sale."

If the quoted provision of the statute applies to the transaction out of which this litigation grew, then appellant's plea of limitation was good and should have been sustained because the action was not instituted until after two years from the date of the sale of the securities.

Appellee contends that it does not have application because this is an action in equity, having been transferred to equity on motion of appellant, and partakes of the character of actions for the rescission of a contract and recovery of purchase price; and appellee is not seeking to recover under the Blue Sky Law, but founds her action on the ground that she was a victim of constructive fraud and is seeking relief on the ground of fraud or mistake. It is a further contention of counsel for appellee that the general statutes of limitation of Kentucky, sections 2515 and 2519, are controlling.

Section 2515 in part reads:

"* * * an action for relief on the ground of fraud or mistake, and an action to enforce the liability of bail, shall be commenced within five years next after the cause of action accrued."

And section 2519 reads:

"In actions for relief for fraud or mistake, or damages for either, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake; but no such action shall be brought ten years after the time of making the contract or the perpetration of the fraud."

In First State Bank of Pineville v. Wilson, and First State Bank of Pineville v. Taylor, 246 Ky. 635, 55 S. W. (2d) 657, the court had for consideration a sale by appellant of some of the same securities as are involved in this action. In that case, as in this, the bank made the sale to a customer and sent the order for the bonds to the bank at Asheville, N. C., and the bonds were mailed to the bank at Pineville with a draft on the purchaser attached. It was held that the Kentucky Blue Sky Law was applicable to the sale.

As we view the matter, the case of Thomas v. Fidelity Casualty Co., 258 Ky. 360, 80 S. W. (2d) 8, 9, is conclusive concerning the question of limitation. That was an action by a purchaser of securities on a bond given by a dealer in securities as required by the act in question on the ground that he was induced to purchase the securities by fraud, deceit, etc.

By answer defendant traversed the allegations of the petition and in a second paragraph pleaded limitation. Among other things, it was pleaded in reply that the two-year period of limitation in the Blue Sky Law did not apply where the cause of action is based on fraud and misrepresentation and not upon noncompliance of the seller with the provisions of the law; further, that the purchaser did not discover the fraud until 1933 which was within two years before the commencement of the action. A demurrer to the reply was carried back to the petition and sustained, and plaintiff declining to further plead, the petition was dismissed, and he appealed. It was his contention that the two-year limitation period of the act did not apply in any action for recovery on the ground of fraud but bars

only new and extraordinary remedies created by the act; that sections 2515 and 2519 of the statute applied. After setting forth the provisions of those sections, this court in its opinion said:

"It is further contended that even if the two-year statute of limitations applies to fraud cases, the time does not begin to run until the fraud is discovered, or, by the exercise of ordinary care, ought to have been discovered.

"The solution of the problem depends, of course, upon the proper construction of the Securities Act. The period within which the purchaser of securities must bring an action for damages resulting from a violation of any provision of the act by the seller was fixed by the Legislature, and that was a matter entirely within its discretion. It saw fit to limit the period to two years, and there is no saving clause creating any exception. It is said that the two-year limitation period has no application to fraud cases, but was intended to apply only to those new and extraordinary remedies created by the act. It is true the act does create new remedies, since it permits the purchaser of securities to rescind the contract of sale for the violation by the seller of any of its provisions, such as failure to register the securities sold according to the requirements of section 5 of the act [Ky. Stats. sec. 883e-5], Smith v. Crawford, 228 Ky. 420, 15 S. W. [2d] 249, but the statute also provides a remedy for the purchaser when he is induced to purchase securities by fraud and misrepresentation. It is a remedy he could have invoked in the absence of the act, and one that is available to all defrauded purchasers of property of any description. The Legislature selected certain classes of property in the sales of which fraud frequently played a prominent part and attempted to circumscribe their sale with safeguards that would protect the purchaser from being overreached."

In answer to argument that if section 2519 did not apply the two-year statute would not begin to run until the discovery of the fraud, it was further said:

"No provision was made for postponing the time when the two-year statute of limitations begins to

run. * * * The Legislature has ample power, if it sees fit, to limit the time within which remedies to enforce a right may be invoked. It is the sole judge in such matters, and where, as in the instant case, it has spoken in plain and unmistakable language the courts are without authority to ingraft an exception upon the statute.''

Viewing the transaction as revealed by the record in the light of the authorities cited, we are constrained to the view that the two-year limitation period fixed by the quoted provisions of the Blue Sky Law.

Wherefore, the judgment is reversed for proceedings consistent with this opinion.