ALICE A. GILL, executrix, *vs.* HENRY HORNBLOWER & others.

Suffolk. February 6, 7, 24, 1936. — February 28, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Stockbroker. Sale,* What constitutes, Of securities. *Agency,* What constitutes. *Sale of Securities Act.*

A purchase by a stockbroker, on order of a customer and through a stock exchange in another State, of shares of stock for which the customer immediately paid and which the stockbroker immediately caused to be transferred to the customer's name before delivery through him to the customer, was not a "sale" by the broker under the sale of securities act, G. L. (Ter. Ed.) c. 110A, but was a purchase by him as the customer's agent.

BILL IN EQUITY, by amendment from an action of contract, the writ in which was dated January 5, 1935.

In the Superior Court, the suit was heard by *Swift*, J., who reported his findings and rulings for determination by this court.

*L. Withington*, for the defendants.

*H. Traverse*, for the plaintiff.

*A. J. Santry*, by leave of court, submitted a brief as *amicus curiae*.

LUMMUS, J.   On December 7, 1931, the plaintiff's testatrix went to the offices of the defendants, who were stockbrokers in Boston, and gave them an order to buy for her five hundred shares of the common stock without par value of Electric Bond and Share Company, at $15 a share, for which she was to pay cash.   The purchase was made on the New York Curb Exchange in New York, of which the defendants were members.   Afterwards, on December 8, 1931, the defendants sent the plaintiff's testatrix a bill for the price, $7,500 plus a commission of $62.50, which she paid on December 9, 1931.   The defendants on the same day ordered their New York office to cause the five hundred shares to be transferred into the name of the plaintiff's testatrix, and this was done.   The new certificates in her name were delivered to her in Boston on December 16, 1931.   The defendants were in no way interested in promoting the sale of the stock.   On March 28, 1932, the common stock having been changed by vote of the stockholders into stock having par value, she exchanged her certificates for new ones representing the common stock having par value.   She held these certificates until her death on March 25, 1934.

Afterwards the plaintiff, having sold the stock, made what she contends was a tender of other certificates for five hundred shares, together with all dividends received, to the defendants, and demanded a return of the purchase price.   On January 5, 1935, she brought an action of contract to recover the purchase price with interest.   She contends, and we assume without deciding, that the shares in question were not exempted from the sale of securities act, G. L. (Ter. Ed.) c. 110A, and had never been the subject of the "notice of intention to offer for sale" provided

for by § 5 of that chapter, or any of the other proceedings required to qualify shares of stock for sale in this Commonwealth under said chapter, which are recited briefly in *Kneeland* v. *Emerton*, 280 Mass. 371, and *Bauer* v. *Bond & Goodwin Inc.* 285 Mass. 117. The action of contract was amended into a bill in equity on January 3, 1936.

One point is decisive of the case. The prohibition of § 5 of the statute is directed against selling securities falling within the statute and not qualified under it. *Kneeland* v. *Emerton*, 280 Mass. 371, 383. Section 2 (d) defines a "Sale" as including "an attempt to sell, an option of sale, a solicitation of a sale, a subscription or an offer to sell." The form of these enactments has since been changed by St. 1932, c. 290, with respect to § 2 (d) and § 5, but not, it is believed, so as to affect the question in this case. That question is, whether the transaction complained of was a "Sale" at all. The purpose of the statute was "the protection of the public from fraud and imposition in the sale to them of securities of little or no value or based upon unsubstantial projects and schemes." *Kneeland* v. *Emerton*, 280 Mass. 371, 376. The "notice of intention to offer for sale" a specified security under § 5 must be filed "by a person offering the same for sale" or by the representatives of the corporation itself. It is daily practice for a stockbroker to be asked to buy for a customer, often in some stock exchange in another and possibly remote State or country, some security not commonly bought and sold on the market here. Often neither the corporation issuing the security nor any dealer or stockbroker has any substantial interest in qualifying the security under our sale of securities act. If a stockbroker in Massachusetts could not execute such an order without first causing the security to be so qualified, that would tend to make it impossible for a resident of Massachusetts to buy such a security without employing a broker in another State for the purpose.

In ordinary speech, the transaction in question would not be described as a "sale" of stock by the defendants to the plaintiff's testatrix. Rather, the defendants were her agents to buy stock. Reported cases tend to show that

the law takes the same view of the transaction. *Durant* v. *Burt*, 98 Mass. 161. *Giddings* v. *Sears*, 103 Mass. 311. *Colt* v. *Clapp*, 127 Mass. 476. *Downer* v. *Cripps*, 170 Mass. 345. *Picard* v. *Beers*, 195 Mass. 419, 428. *Wisbey* v. *Alan Shepard & Co. Inc.* 268 Mass. 21, 22. *Palley* v. *Worcester County National Bank*, 290 Mass. 501, 508. *Campbell* v. *Willis*, 290 Fed. Rep. 271, 53 App. D. C. 296. A case arising under St. 1890, c. 437, § 2, is especially in point. That section, in the first clause, provided that whoever "contracts to buy or sell upon credit or upon margin any securities or commodities, having at the time of contract no intention to perform the same by the actual receipt or delivery of the securities or commodities, and payment of the price," might recover from the other party, cognizant of such want of intention, the value of anything delivered. In *Rice* v. *Winslow*, 180 Mass. 500, affirmed in *Post* v. *Leland*, 184 Mass. 601, 604, 605, the plaintiff deposited a margin with the defendant stockbroker to cover purchases of securities actually bought and paid for by the defendant on the plaintiff's order. The plaintiff sued to recover the value of the margin, alleging that he had, to the knowledge of the defendant, no intention to pay for and receive the securities, but intended that the defendant should sell them at the plaintiff's order and that the transaction should be closed in that way. The plaintiff contended that, since under the Massachusetts rule the title to the securities when bought vested in the defendant broker (*Chase* v. *Boston*, 180 Mass. 458; *Pizer* v. *Hunt*, 253 Mass. 321, 330; *Lavien* v. *Norman*, 55 Fed. Rep. (2d) 91; *Hammon* v. *Paine*, 56 Fed. Rep. (2d) 19; *Denton* v. *Gurnett & Co.* 69 Fed. Rep. (2d) 750), the contract was necessarily for a sale to the plaintiff customer when he should pay the price; and that, since he had no intention to pay the price and receive the securities, the statute was violated. But the court held that contention unsound. Loring, J., said (page 502), "Where a broker is employed to buy and carry stocks on a margin, his relation to the customer in buying the stock is that of an agent." He continued (page 503), "Such a transaction . . . is not within

the first clause because it is a case where the plaintiff did not buy of the defendant, but where he employed the defendant to buy."

In the present case, where the purchase was for cash and not on margin, the theory that the transaction was a sale by the broker to the customer is less tenable than it was in *Rice* v. *Winslow*. Whether, during the brief time between the purchase of the stock on the New York Curb Exchange and the payment for it by the plaintiff's testatrix, the title to the stock was in the defendants, or in the plaintiff's testatrix subject to a lien for reimbursement in favor of the defendants (*Arwshan* v. *Meshaka*, 288 Mass. 31, 35; Am. Law Inst. Restatement: Agency, § 464 (a); *John D. Hope & Co.* v. *Glendinning*, [1911] A. C. 419), the essence of the transaction was a purchase for the plaintiff's testatrix and not a sale by the defendants to her. See *Colpitts* v. *L. C. Fisher Co.* 289 Mass. 232, 234.

This result is consistent with *Kneeland* v. *Emerton*, 280 Mass. 371, 374, 382, 383. In that case the plaintiff instructed one Gerard, who had already bought similar stock from the defendant, to place the plaintiff's order for one hundred shares. Gerard placed the order with the defendant's agent, who forwarded it to the defendant. Upon receipt of the order, the defendant bought one hundred shares from a brokerage house in Boston, and a few days later sold them to the plaintiff for $1,500. What the defendant paid for them did not appear. The defendant merely bought shares for the purpose of reselling them to the plaintiff. No agency was involved. The distinction is made clear by *Farr* v. *Fratus*, 277 Mass. 346, which likewise was a case of sale and not of agency. See also *Davis* v. *Arnold*, 267 Mass. 103.

*Bill dismissed with costs.*