JAMES HERSCOT *vs.* NICHOLAS J. GEROLD & others.

Suffolk. December 5, 1963. — January 6, 1964.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Stockbroker. Sale,* What constitutes, Sale of securities. *Agency,* What constitutes. *Sale of Securities Act. Words,* "Sale."

Where a stockbroker, on an unsolicited order given to him by a customer and for a commission paid to him by the customer, purchased stock from a third person "over the counter" and sent the customer a confirmation of the purchase as his agent, and the stock was delivered to and paid for by the customer, the stockbroker acted merely as an agent of the customer and there was no sale, or "solicitation, looking to a sale," by the stockbroker to the customer within §§ 2, 5, of the Sale of Securities Act, G. L. c. 110A.

BILL IN EQUITY filed in the Superior Court on March 26, 1962.

The suit was heard by *Lurie,* J.

*Sumner H. Woodrow* for the plaintiff.

*Gerald May* for the defendants.

WILKINS, C.J.   This bill in equity against the members of the stockbrokerage firm of Josephthal & Co. seeks to rescind the purchase of 100 shares of stock of Triumph Storecrafters on the ground that the defendants never filed a notice of intention to sell as allegedly required by the Sale of Securities Act (popularly known as the Blue Sky law). See G. L. c. 110A, § 5 (as amended through St. 1954, c. 558, § 3); § 18 (as amended through St. 1938, c. 445, § 12).   The judge filed a report of the material facts found by him.   A final decree was entered dismissing the bill.   The plaintiff appealed.   The evidence is reported.

On or about May 15, 1961, the plaintiff met one Endler, a registered representative of the defendants, at Fort Devens, where both were enlisted men briefly on army reserve duty.   The plaintiff said that "he was not unwilling to engage in the purchase of low-priced speculations," and asked Endler if he knew of any.   Endler mentioned a low priced over-the-counter stock, Triumph Storecrafters.   The plaintiff asked Endler to find out the price.   Later Endler telephoned the defendants' Boston office and learned that the stock was selling between $5.50 and $6 a share.   The following day Endler reported this to the plaintiff, who told Endler to buy 100 shares with a limit of $6.   Endler telephoned the order to the Boston office, which telegraphed it to the defendants' New York office, which bought 100 shares at $5.50 from a firm known as Gregory & Company.   The New York office confirmed the execution of the transaction to the Boston office, and sent the plaintiff a written confirmation of the purchase as his agent.   Later delivery was made, and the plaintiff paid $550 for the stock and a commission of $12.50 to the defendants.   The defendants operate a brokerage business limited to buying and selling stocks on orders of customers on a commission basis.   They did not own any Triumph Storecrafters stock.

Upon these facts the judge ruled that the case is governed by *Gill* v. *Hornblower,* 294 Mass. 26; that the defendants were the agents of the plaintiff in buying the stock; that there was no solicitation of the plaintiff to buy; that

there was no sale by the defendants to the plaintiff; and that the plaintiff had not sustained the burden of proof of establishing such a sale.

General Laws c. 110A, inserted by St. 1932, c. 290, § 1, provides in part in § 5: "No security, not exempt under section four, shall be sold, except as exempted by section three, within this commonwealth, until there shall have been filed with the commission a notice of intention to sell the security in question . . . ." In the definitions in § 2 of c. 110A "sale," "sell," and "sold" shall include "solicitation, looking to a sale." The issue is whether there was a sale, or solicitation looking to a sale, by the defendants to the plaintiff.

The facts found by the judge were fully justified, if not required, by the evidence and wholly preclude most of the plaintiff's arguments. Completely decisive are the findings that there was no solicitation of the plaintiff nor any sale by the defendants to the plaintiff.

The judge correctly ruled that the case is governed by *Gill* v. *Hornblower,* 294 Mass. 26, the facts of which are indistinguishable from those in the case at bar. There the plaintiff's testatrix gave to the defendants, a firm of Boston stockbrokers, an order to buy 500 shares of Electric Bond and Share Company. The defendants were in no way interested in promoting the sale of that stock, and had not given notice of intention to sell under G. L. c. 110A, § 5. Purchase was made on the New York Curb Exchange, of which the defendants were members, and certificates in the name of the plaintiff's testatrix were delivered to her in Boston. In deciding for the defendants it was said: "In ordinary speech, the transaction . . . would not be described as a 'sale' of stock by the defendants to the plaintiff's testatrix. Rather, the defendants were her agents to buy stock. Reported cases tend to show that the law takes the same view of the transaction [pp. 28–29]. . . . [T]he essence of the transaction was a purchase for the plaintiff's testatrix and not a sale by the defendants to her [p. 30]."

The plaintiff's efforts to distinguish the *Gill* case are too

specious to merit protracted discussion. In *Kneeland* v. *Emerton,* 280 Mass. 371, and *Bauer* v. *Bond & Goodwin Inc.* 285 Mass. 117, there was no agency. Both were cited in the *Gill* case. They do not aid the plaintiff. Certain amendments to c. 110A do not affect the question before us. St. 1932, c. 290, § 1. St. 1938, c. 445. St. 1954, c. 558. We do not agree that the Legislature has shown an intent to include both principal and agent transactions within the word "sale."

*Decree affirmed with costs of appeal.*