JANICE H. LANE v. ALEXANDER BROWN GRISWOLD, BENJAMIN H. GRISWOLD, III, CHARLES S. GARLAND, F. GRAINGER MARBURG, WILLIAM J. PRICE, III, J. CREIGHTON RIEPE, Y. E. BOOKER, JAMES McHENRY, F. BARTON HARVEY, JOSEPH L. TURNER, PHILLIP H. WATTS, BENJAMIN S. WILLIS, NORMAN FARQUHER, JAMES E. HOLMES, JR., W. JAMES PRICE, IV, S. BONSAL WHITE, JR., AND R. GERARD WILLSE, JR., T/D/B/A ALEX BROWN & SONS, A PARTNERSHIP.

(Filed 28 February, 1968.)

1. **Pleadings § 30—**

    A motion for judgment on the pleadings on the ground that the complaint fails to state a cause of action is tantamount to a demurrer, and upon the hearing of such motion the court is limited solely to a consideration of the pleadings.

2. **Corporations § 18; Sales § 1—**

    The word "sale" as used in the North Carolina Securities Law, G.S. 78-2(f), will be presumed, in the absence of a contrary intent in the statute, to have its usual meaning of a transfer of property from one person to another for a valuable consideration.

3. **Corporations § 18; Sales § 13— Unsolicited purchase of nonregistered stock by an agent stockbroker is not a voidable sale under the Securities Law.**

    In an action by the purchaser of stock to render void a contract of stock purchase and recover the purchase price thereof, allegations that plaintiff in this State placed an unsolicited order for the purchase of stock with defendant stockbrokers in another state and that this order was filled by defendants, as agent for plaintiff, through its own office or

clearinghouse in another state, *are held* ineffectual to allege a sale or an offer for sale of unregistered securities within the purview of G.S. 78-6 and G.S. 78-22, since it appears from the complaint that defendants were acting solely as the agent of plaintiff and not as a seller of the securities or as seller's agent.

**4. Corporations § 18;    Sales § 13;    Courts § 21—**

Allegations that defendant stockbrokers, as agent for plaintiff, purchased shares of stock through its office or clearinghouse in another state and that the stock was subsequently delivered to plaintiff upon plaintiff's payment in this State of a sight draft attached to the securities, *are held* ineffectual to allege a sale of unregistered securities in this State within the meaning of G.S. 78-6 and G.S. 78-22, since the sale was consummated in the other state upon the purchase of the stock, the title having vested immediately in the plaintiff.

**5. Principal and Agent § 1;    Brokers and Factors § 1—**

The ordinary relationship of a stockbroker to his customer is that of principal and agent.

**6. Pleadings § 30—**

Upon the hearing of a motion for judgment on the pleadings, error by the trial court in considering facts stipulated by the parties *is held* not prejudicial when the facts stipulated are within the scope of the factual allegations in the complaint and no objection was entered to the consideration thereof.

**7. Appeal and Error § 55—**

Technical errors by the trial court in ruling on matters of pleading do not justify reversal when the complaint states a defective cause of action.

**8. Pleadings § 25—**

Motion to amend a complaint made after trial is properly denied where the amendment sets up a wholly different cause of action or an inconsistent cause. G.S. 1-163.

**9. Appeal and Error § 16—**

An appeal from a final judgment *eo instanti* removes the case from the Superior Court and transfers jurisdiction to the Supreme Court, and thereafter the Superior Court is *functus officio* to permit an amendment to the pleadings.

HUSKINS, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Gambill, J.,* 6 March 1967 Civil Session of FORSYTH. Docketed and argued as Case No. 446, Fall Term 1967, and docketed as Case No. 442, Spring Term 1968.

Civil action for recovery under the provisions of G.S. 78-22 of the sum of $5,500 allegedly paid for 10,000 shares of the stock of the Hydramotive Corporation, which stock was not registered under the Securities Law of North Carolina as required by G.S. 78-6, heard

upon a demurrer to the complaint and a motion by defendants for judgment on the pleadings.

This is a summary in substance of the essential facts alleged in plaintiff's complaint, except when quoted: Plaintiff is a citizen and resident of Mecklenburg County, North Carolina. Defendants are a partnership and registered dealers in securities in the State of North Carolina, with its principal office in the city of Baltimore, Maryland, and with offices in the city of Winston-Salem, Forsyth County, North Carolina, and in Washington, D. C.

"On or about July 10, 1961, the plaintiff, in Mecklenburg County, North Carolina, placed an order by telephone with the Washington, D. C. office of the defendants; * * * for ten thousand (10,000) shares of Hydramotive Corporation at the price of $5,500.00; that this *unsolicited* order was *filled by the defendants, as agent*, through its own offices or through its clearinghouse in New York, New York." (Emphasis ours.) Later the shares of said securities were mailed by defendants to the Bank of Charlotte, Charlotte, North Carolina, with sight draft attached. The Bank of Charlotte delivered said securities to the plaintiff after payment had been made in full of the sight draft by plaintiff at the Bank of Charlotte, Charlotte, North Carolina. Plaintiff alleges upon advice and belief that the sale of said securities took place in the State of North Carolina, and that the title to said securities was transferred to the plaintiff at the time of the payment by the plaintiff of the sight draft attached to said securities. Said securities were not registered for sale in North Carolina under the North Carolina Securities Law or exempt from registration under the provisions of G.S. 78-3 or G.S. 78-4 of the North Carolina Securities Law. The sale of said securities in North Carolina was in violation of the provisions of the North Carolina Securities Law, and in particular G.S. 78-6. Plaintiff tendered to the defendants the securities sold and made written demand upon defendants for the full amount paid by the purchaser plus interest at 6% from the settlement date in order to avoid the sales. Defendants refused to pay to the plaintiff the full amount paid by her plus interest at 6%. Under the provisions of G.S. 78-22, the sale of said securities was void at the election of plaintiff, and defendants are liable jointly and severally to plaintiff for the full amount of said purchase price paid to defendants by plaintiff together with interest at the rate of 6%.

Defendants filed an answer in substance as follows: Defendants admit that plaintiff is a resident of Mecklenburg County, North Carolina; that they are registered dealers in securities in the State of North Carolina with their principal office in the city of Baltimore,

LANE *v.* GRISWOLD.

Maryland, and with offices in the city of Winston-Salem, North Carolina, and in Washington, D. C.; and that they were at the time herein complained of doing business in the city of Winston-Salem, North Carolina. Defendants further admit that on 10 July 1961 plaintiff in Charlotte, North Carolina, placed an order by telephone with their Washington, D. C., office requesting defendants to purchase for her 10,000 shares of Hydramotive Corporation. Such request was unsolicited by defendants, and pursuant to such request defendants purchased 10,000 shares of Hydramotive Corporation from third parties while acting as agent for the plaintiff; such purchase was made on the open market and upon purchase of said securities on the account and risk of plaintiff, defendants mailed said securities to the Bank of Charlotte, Charlotte, North Carolina, with a sight draft attached. Defendants deny that plaintiff ever paid, in part or in full, for said securities, the true facts being that said securities were in fact paid for and delivered to Southeastern Corporation, a corporation of which plaintiff was an employee. Defendants deny that any sale of said securities took place in the State of North Carolina. Defendants admit that said securities were not registered for sale in North Carolina under any provisions of the North Carolina Securities Law. Defendants further deny that the sales of said securities were in violation of the provisions of the North Carolina Securities Law, and in particular G.S. 78-6. They also deny that plaintiff tendered to them the securities sold and made written demand upon defendants for the full amount paid by the purchaser plus interest at 6%. Defendants' answer contains three further answers and defenses which are not set forth here because they are not relevant on this appeal.

Defendants demurred to the complaint on the ground that it failed to allege facts sufficient to state a cause of action, and further moved for judgment on the pleadings.

When the demurrer and motion by defendants for judgment on the pleadings came on to be heard before Judge Gambill, the parties stipulated and agreed in substance as follows: The transaction alleged in the complaint was initiated by the plaintiff by placing a telephone call with defendants' office in Washington, D. C., for the purpose of giving an unsolicited order by telephone for the purchase of a specified quantity of the stock alleged in the complaint. By telephone defendants agreed to purchase the stock in question for plaintiff, and the purchases were thereafter executed by defendants through its office in Baltimore, Maryland, *as agent for the purchaser*. After the purchase had been executed, a written confirmation of its execution was sent to the plaintiff by defendants. The parties stipulated

and agreed that these stipulations may be considered by the court upon the demurrer and motion by defendants for judgment on the pleadings.

When the matter came on for hearing before Judge Gambill, the court granted leave to defendants to file an amended demurrer and motion for judgment on the pleadings as follows: (1) The transaction in question did not involve a "sale" of securities from defendants to plaintiff within the meaning of G.S. 78-6; (2) defendants were not "sellers" or "agents for the sellers" within the meaning of G.S. 78-22; (3) the transaction was not solicited by defendants but on the contrary was initiated and brought about by plaintiff herself, and accordingly did not even involve a prohibited offer for sale within the meaning of G.S. 78-6; and (4) the transaction did not occur within the State of North Carolina and therefore does not come within the coverage of G.S. 78-6.

Judge Gambill on 15 March 1967 entered judgment in substance as follows: This matter came on to be heard upon the demurrer to the complaint and motion for judgment on the pleadings filed by the defendants and the amended demurrer and motion for judgment on the pleadings and stipulations filed by the parties. The court found the following facts: (1) The transaction alleged in the complaint was initiated by the plaintiff by placing a telephone call to defendants at its Washington, D. C., office, for the purpose of giving an unsolicited order by telephone for the purchase of the stock alleged in the complaint; and (2) that pursuant to the telephone message defendants executed the order for the purchase of said stock through its office in Baltimore, Maryland, as agent for the purchaser. After the purchase had been executed, a written confirmation of such purchase was sent to plaintiff by defendants from their Baltimore office. The Court having heard arguments of counsel on both sides and having considered said arguments, the pleadings, and stipulations, concluded as a matter of law that the purchase of the stock alleged in the complaint did not involve a "sale" of securities from defendants to plaintiff within the meaning of G.S. 78-6, nor was said purchase an offer for sale within the meaning of G.S. 78-6; that the defendants were not sellers or agents for the sellers within the meaning of G.S. 78-22; that the Securities Law of North Carolina does not cover this said transaction alleged in the complaint and does not impose any liability upon the defendants under the allegations of the complaint and the stipulated facts; that the plaintiff is not entitled to recover of defendants anything; and that the amended demurrer and motion by defendants for judgment on the pleadings are sustained and allowed. The court ordered and adjudged that the ac-

tion be dismissed with the costs taxed against plaintiff. Immediately upon the signing of the judgment by Judge Gambill on 15 March 1967, plaintiff excepted and in open court appealed to the Supreme Court. These appeal entries were signed by Judge Gambill on 15 March 1967, but they were filed on 5 April 1967.

Thereafter, plaintiff moved orally without setting forth any reasons, according to the record before us, that the judge in his discretion grant the plaintiff leave to amend her complaint. The date of this oral motion is not set forth in the record. The court being of opinion that the plaintiff had a defective cause of action denied the request. Later on 29 March 1967 plaintiff filed a written motion setting forth the oral motion to amend the complaint in substance as follows: To strike from the complaint the following: ". . . (T)hat the shares of said securities were mailed or caused to be mailed by the defendant to the Bank of Charlotte, Charlotte, North Carolina, with sight draft attached; that the Bank of Charlotte delivered the said securities to the plaintiff after payment had been made in full by the plaintiff at the Bank of Charlotte, Mecklenburg County, North Carolina," and to substitute in lieu thereof the following: "The defendants purchased said shares of securities from a dealer or dealers and paid or agreed to pay said dealer or dealers the purchase price of said securities; that the defendants, acting as agent of the selling dealer or dealers mailed the certificates or caused the certificates to be mailed to the Bank of Charlotte, Charlotte, North Carolina, with sight draft attached; that it was the intention of the plaintiff and the defendants that the certificates be delivered to the plaintiff upon the payment by the plaintiff of the sight draft; that the plaintiff paid the sight draft in full; that the Bank of Charlotte, acting as agent of the defendants, collected the full amount due from the plaintiff, and the Bank of Charlotte acting as agent of the defendants remitted to the defendants the amount of payment collected on said sight draft and delivered the certificates to the plaintiff at the Bank of Charlotte, Charlotte, North Carolina."

After the filing of this written motion, Judge Gambill on 29 March 1967 denied plaintiff's motion to amend her complaint. Plaintiff appealed to the Supreme Court.

*Herbert, James & Williams by Henry James, Jr., and Jordan, Wright, Henson & Nichols by Karl N. Hill, Jr., for plaintiff appellant.*

*Hudson, Ferrell, Petree, Stockton, Stockton & Robinson by R. M. Stockton, Jr., and W. F. Maready, and Covington & Burling by David B. Isbell for defendant appellees.*

PARKER, C.J.　Defendants filed a demurrer to the complaint, and made a motion for judgment on the pleadings. A motion for judgment on the pleadings by defendants is tantamount to a demurrer on the ground that the complaint did not state facts sufficient to constitute a cause of action. *Woodruff v. Insurance Co.,* 260 N.C. 723, 133 S.E. 2d 704; *Fisher v. Motor Co.,* 249 N.C. 617, 107 S.E. 2d 94; *Hill v. Parker,* 248 N.C. 662, 104 S.E. 2d 848; 3 Strong, N. C. Index, Pleadings, § 30, and Supplement to *ibid;* 71 C.J.S., Pleading, § 425(b). In *Erickson v. Starling,* 235 N.C. 643, 71 S.E. 2d 384, Ervin, J., said for the Court:

> "A demurrer and a motion for judgment on the pleadings are somewhat related procedural devices. Each denies the legal sufficiency of the pleading of an adversary and raises an issue of law upon the facts stated in such pleading. The scope of a motion for judgment on the pleadings surpasses that of a demurrer, however, in that the former is an application for an immediate judgment in the movant's favor. 71 C.J.S., Pleading, section 425. . . .
>
> *　　　　*　　　　*
>
> "When a party moves for judgment on the pleadings, he admits these two things for the purpose of his motion, namely: (1) The truth of all well-pleaded facts in the pleading of his adversary, together with all fair inferences to be drawn from such facts; and (2) the untruth of his own allegations in so far as they are controverted by the pleading of his adversary."

In *Burton v. Reidsville,* 240 N.C. 577, 581, 83 S.E. 2d 651, 654, it is said: "Moreover, if good in any respect or to any extent, a plea will not be overthrown by motion for judgment on the pleadings."

On a motion for judgment on the pleadings it is error for the court to hear evidence and find facts in support of its judgment, since only the pleadings themselves may be considered. *Reidsville v. Burton,* 269 N.C. 206, 152 S.E. 2d 147; *Crew v. Crew,* 236 N.C. 528, 73 S.E. 2d 309; *Remsen v. Edwards,* 236 N.C. 427, 72 S.E. 2d 879; *Erickson v. Starling, supra.*

In *Surplus Co. v. Pleasants,* 263 N.C. 587, 139 S.E. 2d 892, the Court said:

> " 'On demurrer we take the case as made by the complaint.' *Barber v. Wooten,* 234 N.C. 107, 66 S.E. 2d 690. The Court said in *Hayes v. Wilmington,* 243 N.C. 525, 538, 91 S.E. 2d 673, 683: 'It is elemental that a demurrer may not call to its aid facts not appearing on the face of the challenged pleading. *Union Trust Co. v. Wilson,* 182 N.C. 166, 108 S.E. 500; *Wood v. Kincaid,*

144 N.C. 393, 57 S.E. 4; *Davison v. Gregory,* 132 N.C. 389, 43 S.E. 916.'

"It is a general and fundamental rule of pleading that on a hearing of a demurrer to a pleading the court ordinarily is limited to a consideration of the pleading demurred to, and an instrument or instruments expressly made a part of the pleading by apt words, and cannot consider evidence, documents, or instruments *aliunde* of the challenged pleading, such as affidavits and stipulations of the parties. *Moore v. W.O.O.W., Inc.,* 253 N.C. 1, 116 S.E. 2d 186; *Lamm v. Crumpler,* 240 N.C. 35, 81 S.E. 2d 138; *Foust v. Durham,* 239 N.C. 306, 79 S.E. 2d 519; *Towery v. Dairy,* 237 N.C. 544, 75 S.E. 2d 534; *McDowell v. Blythe Bros.,* 236 N.C. 396, 72 S.E. 2d 860; *Trust Co. v. Wilson,* 182 N.C. 166, 108 S.E. 500; *Davison v. Gregory,* 132 N.C. 389, 43 S.E. 916; 71 C.J.S., Pleading, § 257; 41 Am. Jur., Pleading, § 246.

" 'According to the weight of authority, matters extrinsic to a pleading may not be considered on the hearing of a demurrer thereto, even though the parties stipulate or agree that such matters may be considered by the court in determining the demurrer.' 41 Am. Jur., Pleading, § 246, p. 466. To the same effect Anno. 137 A.L.R. 483.

"It is familiar learning that a demurrer admits, for the purpose of testing the sufficiency of the pleading, the truth of factual averments therein well stated and such relevant inferences as may be deduced therefrom, but it does not admit any legal inferences or conclusions of law asserted by the pleader. *McKinney v. High Point,* 237 N.C. 66, 74 S.E. 2d 440. While G.S. 1-151 requires us to construe liberally the allegations of a challenged pleading, we are not permitted to read into it facts which it does not contain. *Thomas & Howard Co. v. Insurance Co.,* 241 N.C. 109, 84 S.E. 2d 337; *Johnson v. Johnson,* 259 N.C. 430, 130 S.E. 2d 876."

The relevant provisions of the North Carolina Securities Law are G.S. 78-2, G.S. 78-6, and G.S. 78-22.

G.S. 78-2 defines the terms "offer to sell" or "offer for sale": "(d) Offer to Sell, etc. — 'Offer to sell' or 'offer for sale' shall mean every attempt or offer to dispose of, or solicitation of an order or offer to buy, a security or interest in a security for value." The rest of this subsection of the statute is not relevant here. "(f) Sale, etc. — 'Sale' or 'sell' shall mean every sale or other disposition of a security or interest in a security for value, and every contract to

make any such sale or disposition." The concluding sentence of this subsection is not relevant here.

G.S. 78-6 sets out the prohibition which plaintiff contends was violated here: "No securities . . . shall be offered for sale or sold within this State unless such securities shall have been registered by notification or by qualification as hereinafter defined. . . ." This statute contains exceptions which are not relevant here.

G.S. 78-22 sets forth the remedy which plaintiff by this action seeks to invoke: "Every sale or contract for sale made in violation of any of the provisions of this chapter shall be voidable at the election of the purchaser and the person making such sale or contract for sale, and every director, officer or agent of or for such seller, if such director, officer or agent shall have participated or aided in any way in making such sale shall be jointly and severally liable to such purchaser in an action at law in any court of competent jurisdiction upon tender to the seller of the securities sold or of the contract made for the full amount paid by such purchaser." This section of the statute contains provisos not relevant here.

G.S. 78-2 (f) defines a "sale" as a " 'sale' . . . shall mean every sale or other disposition of a security or interest in a security for value, and every contract to make any such sale or disposition." In *State v. Colonial Club*, 154 N.C. 177, 69 S.E. 771, the Court said: "The word sale is thus defined: 'A sale is a transmutation of property from one man to another in consideration of some price or recompense in value.' 2 Blk. Com. 446." In *Commissioner of Internal Revenue v. Freihofer*, 102 F. 2d 787, 125 A.L.R. 761, the Court said: "Blackstone defined a sale as 'a transmutation of property from one man to another in consideration of some price or recompense in value' 2 Bl. 446. It is a contract for the transfer of property from one person to another for a valuable consideration. See 7 Words and Phrases, First series, Sale, page 6291. There must be parties standing to each other in the relation of buyer and seller, their minds must assent to the same proposition, and a consideration must pass." In accord Black's Law Dictionary, 4th Ed., definition of "sale."

Where the word "sale" is used in G.S. 78-2(f), in the absence of anything to the contrary appearing in the statute, it will be assumed that the word is intended to have its usual signification. *Commissioner of Internal Revenue v. Freihofer, supra.*

The complaint in the instant case alleges in substance: On 10 July 1961 plaintiff in Mecklenburg County, North Carolina, placed an *"unsolicited"* order by telephone with defendants in Washington, D. C., to purchase 10,000 shares of Hydramotive Corporation at the price of $5,500, and this *"unsolicited"* order was filled by defend-

ants, as agent, through its own offices or through its clearinghouse in New York City. There is nothing in the complaint or answer to suggest or show that defendants had ever heard of the Hydramotive Corporation before receiving the *"unsolicited" order* from plaintiff to buy. The only reasonable inference to be drawn from the language of the complaint is that in buying this stock for plaintiff, defendants were acting as her agent. It is true that there was a sale here, but it was a sale made by the selling securities dealer, or, if he was acting as broker, by his customer to plaintiff as purchaser for whom defendants here as buyer and broker were acting as agent for plaintiff. At this point title passed directly from the seller to the purchaser, the plaintiff, for whom the defendants were acting as agent and broker in purchasing the securities.

In 12 Am. Jur. 2d, Brokers, § 131, it is said:

> "According to most of the cases, the title to securities purchased by a stockbroker vests immediately in the customer, whether the purchase is on margin or otherwise, and even though the broker retains possession of the stock certificate or the customer has paid nothing on the purchase price. Under this rule, the customer for whom a broker purchases stock is the owner thereof from the time of purchase, whether purchased in his name or not."

In 12 C.J.S., Brokers, § 29, it is said:

> "Ordinarily, however, the title to, or ownership of, stock or other securities bought by a broker for a client on margin or otherwise, whether or not purchased in his own name, vests in the customer upon the purchase and notification thereof to him, notwithstanding nondelivery of the certificate. The customer's title or ownership, however, is subject to the right of the broker to hold the stock as security for the payment of his lien for advances and commissions, he being regarded as a pledgee of the stock. . . ."

Disregarding the conclusions of law alleged in the complaint, it is manifest from the factual allegations in the complaint that the relationship of defendants with the plaintiff was that of principal and agent. It is so alleged in the complaint and is so admitted in the answer. "The ordinary relationship of a stockbroker to his customer is that of principal and agent." 12 Am. Jur. 2d, Brokers, § 113. Accord 12 C.J.S., Brokers, § 11. It is manifest from the factual allegations in the complaint that there was not a "sale" from defendants to plaintiff, nor can the defendants be properly termed the

"seller," because defendants were acting as agent for the plaintiff. There is nothing in the complaint or answer to show that defendants were an agent for the seller of the 10,000 shares of Hydramotive Corporation. It seems clear from the language of G.S. 78-22 that it does not apply to an agent for the purchase of securities. There was not between defendants and plaintiff any sale prohibited by G.S. 78-6 and therefore voidable under G.S. 78-22 (and potentially punishable by criminal sanctions under G.S. 78-23(b)); nor were defendants either the seller or an agent for the seller so as to be subject to suit under G.S. 78-22, for the complaint specifically alleges that this unsolicited order was filled by the defendants as agent for the plaintiff. It might be argued that even a broker's execution of the purchase order as agent for the purchaser would be subject to rescission under G.S. 78-22 if the customer's order had been solicited by the broker. Such an argument would rest on the fact that G.S. 78-6 prohibits not only sales but also offers for sale, which are defined by G.S. 78-2(d) to include "solicitation of an order or offer to buy." Such an argument is untenable here, because the complaint states that her order to defendants to purchase for her 10,000 shares of Hydramotive Corporation at the price of $5,500 was an *"unsolicited" order*.

G.S. 78-6 states: "No securities . . . shall be offered for sale or sold within this State. . . ." The operative language of that section confines its prohibition and prescribes the jurisdictional limitations of the statute to sales within North Carolina. This allegation in the complaint is a conclusion of law and not a factual averment: "That the plaintiff is advised and believes, and upon such advice and belief alleges, that the sale of said securities took place in the State of North Carolina, and the title was transferred to the plaintiff at the time of the payment by the plaintiff in accordance with the sight draft attached to said securities, which were delivered to the Bank of Charlotte, Mecklenburg County, North Carolina." The reasonable inference to be drawn from the factual allegations of the complaint is that the defendants as agent for plaintiff purchased the 10,000 shares of Hydramotive Corporation stock at the price of $5,500 at its office in Washington, D. C., or through its own clearinghouse in New York City. When this stock was purchased by defendants as agent for plaintiff either in New York City or Washington, D. C., title to this stock passed directly and immediately to the customer. Any increase in the value of the stock, from that time forth, belonged to plaintiff and any decrease in value was his loss. *Eddy v. Schiebel*, 112 Conn. 248, 152 A. 66; *Murphy v. Sincere*, 299 Ill. App. 580, 20 N.E. 2d 610; 12 Am. Jur. 2d, Brokers, § 131; 12

C.J.S., Brokers, § 29; 14 Fletcher, Cyclopedia Corporations, Perm. Ed., § 6742. The last act necessary to make the contract complete between plaintiff and defendants for the purchase of this stock took place in Washington, D. C., or New York City and not in the State of North Carolina. If a customer could place an unsolicited order with a dealer in registered securities by telephone in New York City and successfully contend that title did not pass to him and that the contract was not complete until he paid for the stock in North Carolina, it would permit a customer if the stock fell to repudiate the transaction, which would have a disastrous effect upon the whole business of lawful and legitimate dealing in securities. If under such circumstances the price of the stock advances, there would seem to be no question but that the purchaser would compel the broker to deliver the stock by suit or otherwise. It is manifest from the factual allegations of the complaint and the factual allegations of the complaint admitted in the answer that defendants did not offer for sale nor sell 10,000 shares of Hydramotive Corporation stock to plaintiff within the limits of the State of North Carolina.

*Doherty v. Bartlett,* 81 F. 2d 920, involved separate actions brought in the District Court of New Hampshire for money had and received by Fred G. Bartlett, Leon S. Knowlton, and Joseph O. Tremblay, all of Manchester in the state of New Hampshire, against Henry L. Doherty of the city of New York and state of New York, doing business under the name and style of Henry L. Doherty & Co. In each action the plaintiff seeks to recover money paid for stocks, which it is alleged were illegally sold in New Hampshire in violation of chapter 202 of the Session Laws of 1917, entitled "An Act to protect the public against the sale of worthless securities." The Court held that the effect of this conference over the telephone was not a violation of New Hampshire statute, no act of the salesman, either of solicitation or offer of sale, taking place in New Hampshire, and no contract of sale being entered into by such salesman while in New Hampshire. This is true even though the consummation of the transaction was the acceptance by telephone by the buyer in New Hampshire, the solicitation and offer to sell the stock being made by the salesman in Massachusetts.

Judge Gambill committed error in considering the stipulated facts and also in finding facts. In *Erickson v. Starling, supra,* the Court said:

> "On a motion for judgment on the pleadings, the presiding judge should consider the pleadings, and nothing else. . . . He should not hear extrinsic evidence, or make findings of fact. . . ."

The error committed by Judge Gambill in considering the stipulated facts was harmless and nonprejudicial, for the reason that the stipulated facts are generally within the scope of the factual allegations in the complaint and do not radically depart therefrom. There are no essential or ultimate facts stated in the stipulations which are not also contained in or inferred by plaintiff's allegations. We are fortified in this result by the fact that Judge Gambill's consideration of these stipulations was not excepted to nor assigned as error by the plaintiff. The court was correct in entering judgment to the effect that the transactions alleged did not involve a "sale" of securities from the defendants to the plaintiff within the meaning of G.S. 78-6; that said transactions did not amount to an offer for sale within the meaning of G.S. 78-6; that the defendants were not sellers nor agents for the sellers within the meaning of G.S. 78-22; that the Securities Law of North Carolina does not cover the said transactions alleged in the complaint; that the plaintiff is not entitled to recover of defendants under the provisions of the Securities Law of North Carolina, and in sustaining the demurrer and motion for judgment on the pleadings. Judge Gambill's findings of fact will be considered as surplusage and improvidently made, but not prejudicial. We are confirmed in this opinion that the findings of fact were not prejudicial for the reason that plaintiff has not assigned them as error.

In spite of the technical errors made by Judge Gambill in considering the stipulations and in making findings of fact, the complaint itself contains insufficient allegations to withstand the challenge by demurrer and for a judgment on the pleadings. "If the cause of action as stated by the plaintiff is inherently bad, why permit him to proceed further in the case for if he proves everything that he alleges he must eventually fail in the action." *Garrison v. Williams,* 150 N.C. 674, 64 S.E. 783; *Watson v. Lee County,* 224 N.C. 508, 31 S.E. 2d 535; *Aiken v. Sanderford,* 236 N.C. 760, 73 S.E. 2d 911; *Ice Cream Co. v. Ice Cream Co.,* 238 N.C. 317, 77 S.E. 2d 910; *Beam v. Almond,* 271 N.C. 509, 157 S.E. 2d 215. This is another accepted rule in appellate practice: "Regardless of whether review is by appeal or *certiorari,* the lower court's ruling will not be disturbed where it does not result in prejudice or harm. . . ." 1 Strong, N. C. Index 2d, Appeal and Error, § 55.

From reading our Securities Act, it is apparent that the Legislature has shown no intent to include both principal and agent transactions within the word "sale." The North Carolina Securities Act is typical of similar statutes in other states. Comparable statutes of

Massachusetts, Georgia, and Illinois are in many ways identical with our Act. After a diligent search, we have found few cases in point which would seem to be some evidence that claims such as made here are unusual. We have found no applicable decision in North Carolina.

In *Gill v. Hornblower,* 294 Mass. 26, 200 N.E. 376, the Court held as correctly summarized in the second headnote in the North Eastern Reporter:

> "Transaction whereby buyer obtained stock through an order given to stockbrokers, the transaction being for cash rather than on margin, *held* not a 'sale' by stockbrokers within statute so as to authorize rescission of transaction because stock had not been subject of notice of intention to offer for sale, the essence of the transaction being a purchase for buyer by the stockbrokers."

In its opinion the Court used this language:

> "It is daily practice for a stockbroker to be asked to buy for a customer, often in some stock exchange in another and possibly remote state or country, some security not commonly bought and sold on the market here. Often neither the corporation issuing the security nor any dealer or stockbroker has any substantial interest in qualifying the security under our sales of securities act. If a stockbroker in Massachusetts could not execute such an order without first causing the security to be so qualified, that would tend to make it impossible for a resident of Massachusetts to buy such a security without employing a broker in another State for the purpose.
>
> "In ordinary speech, the transaction in question would not be described as a 'sale' of stock by the defendants to the plaintiff's testatrix. Rather, the defendants were her agents to buy stock. Reported cases tend to show that the law takes the same view of the transaction. [Citing numerous authority.]"

In *Herscot v. Gerold,* 346 Mass. 611, 195 N.E. 2d 70 (1964), the Court held that a stock brokerage firm whose business was limited to buying and selling stock on orders of customers on commission basis did not make a "sale" of security within the Blue Sky Law when it filled a customer's order for a designated stock, no shares of which were owned by firm members, by securing the stock from another firm. In its opinion the Court used this language:

> "The judge correctly ruled that the case is governed by *Gill*

*v. Hornblower,* 294 Mass. 26, 200 N.E. 376, the facts of which are indistinguishable from those in the case at bar. There the plaintiff's testatrix gave to the defendants, a firm of Boston stockbrokers, an order to buy 500 shares of Electric Bond and Share Company. The defendants were in no way interested in promoting the sale of that stock, and had not given notice of intention to sell under G. L. c. 110A, § 5. Purchase was made on the New York Curb Exchange, of which the defendants were members, and certificates in the name of the plaintiff's testatrix were delivered to her in Boston. In deciding for the defendants it was said: 'In ordinary speech, the transaction  *  *  *  would not be described as a "sale" of stock by the defendants to the plaintiff's testatrix. Rather, the defendants were her agents to buy stock. Reported cases tend to show that the law takes the same view of the transaction * * *. [T]he essence of the transaction was a purchase for the plaintiff's testatrix and not a sale by the defendants to her.' "

*Weisbrod v. Lowitz,* 282 Ill. App. 252 (1935), involved an action under the Illinois Blue Sky Laws against licensed stockbrokers for the purchase price of certain unregistered securities which plaintiff alleged were *sold* to him by these brokers. The evidence indicated that plaintiff telephoned one defendant inquiring as to general market quotations. During the course of the conversation, defendant mentioned the Electric Bond and Share Company stating that it would be a good buy at $30 a share. Plaintiff then instructed defendant to purchase 1,000 shares if they could be gotten at that price. Defendants forwarded the order to their New York office which in turn transmitted the order to brokers on the floor of the New York Curb Exchange who made the purchase according to plaintiff's instructions sending a report thereof back to defendants who sent a confirmation to plaintiff showing the purchase price of $30,000 and defendants' brokerage commission of $150. The shares were then transferred to plaintiff by being first delivered to the banks which had lent plaintiff the purchase money which delivery procedure may have some similarity to that employed in the instant case. In upholding the lower court's conclusion that defendants acted solely as plaintiff's agents in purchasing the stock on his order and for his account and that hence plaintiff was not entitled to recover, the court spoke as follows in language clearly apposite to the present situation:

"The sellers of the stock were the undisclosed principals of

the New York brokers who made the sale to defendants' brokers on the floor of the New York Curb Exchange.

\*        \*        \*

"In every transaction of this nature there are two parties — a buyer and a seller. Plaintiff's argument that the act applies to anyone participating in the transaction, even as the agent for the buyer, ignores any distinction or difference between a buyer and a seller. Clearly the legislature did not intend to penalize the buyer in such a transaction, and it would be illogical and abnormal to penalize the buyer's agent who was acting for his principal.

"It should be remembered that in a transaction of this sort there is only one change of ownership, namely, from the seller to the buyer. The New York owners of the stock under consideration did not sell to their brokers but their brokers represented the owners in making the sale. And so plaintiff was not purchasing from his brokers, who were acting as his agents in the matter. The sale was from the New York owners to the plaintiff through the medium of their respective brokers."

In holding that there was no evidence to show that defendants had solicited plaintiff's order, this Illinois Appellate court said that the fact that the broker had told plaintiff it was a " 'good buy' at $30 a share" was "not of controlling importance." Plaintiff had sought information and defendant was merely attempting to supply it.

In *Fine v. Bradford,* 109 Ga. App. 380, 136 S.E. 2d 147, the Court held as summarized in a syllabus by the Court:

"A dealer duly registered under the Georgia Securities Act who in the stated capacity of agent for a Georgia purchaser, through the medium of its New York branch office, contracts with and obtains from a New Jersey broker the stock in question and thereafter delivers it to the purchaser in Georgia has not sold securities within this State in contravention of Code Ann. § 97-104 or § 97-113."

Plaintiff relies on two cases: *First State Bank of Pineville v. Wilson,* 246 Ky. 635, 55 S.W. 2d 657, and *Hardy v. Musicraft Records,* 93 Cal. App. 2d 698, 209 P. 2d 839. These cases are distinguishable from the case at bar. In the *Wilson* case and in a companion case, *First State Bank of Pineville v. Taylor* — both cases being reported as one — it appeared from the evidence that the two doctors purchased from the bank collateral trust bonds issued by the Central Securities Company of Asheville, North Carolina, and that

the defendant bank was acting as the agent of the Central Securities Company of Asheville and was receiving a commission from it for its services. The *Hardy* case is also distinguishable from the case at Bar in that, *inter alia,* the defendant was the seller of its own securities.

According to the record before us, after the judgment was signed on 15 March 1967, and plaintiff had given notice in open court of appeal to the Supreme Court and the appeal entries were signed by Judge Gambill on 15 March 1967, the plaintiff later moved orally that the judge in his discretion give the plaintiff leave to amend her complaint. The court was of the opinion that the plaintiff had a defective cause of action and therefore denied leave to amend the complaint. Thereafter the plaintiff filed a written motion on 29 March 1967 setting forth with details the oral motion, and a hearing was had upon the plaintiff's motion to amend her complaint. The court, being of the opinion that the motion to amend the complaint should not be allowed, entered an order denying her motion to amend the complaint. The plaintiff excepted and assigns as error the denial by the court of her motion to amend her complaint.

The court's denial of the motion to amend the complaint was correct for two reasons: First, G.S. 1-163 permits an amendment in the discretion of the court when the amendment does not change substantially the claim or defense. 1 McIntosh, N. C. Practice and Procedure, 2d Ed., § 1285. The Court said in *Perkins v. Langdon,* 233 N.C. 240, 63 S.E. 2d 565: "An analysis of this statute lends support to the view that the scope of the court's power to allow amendments is broader when dealing with amendments proposed before trial than during or after trial." The motion for the proposed amendment here came after judgment had been signed dismissing the plaintiff's case and after plaintiff had appealed in open court to the Supreme Court. The Court said in *Bassinov v. Finkle,* 261 N.C. 109, 134 S.E. 2d 130: "But the court may not permit a litigant to set up by amendment a wholly different cause of action or an inconsistent cause." In *Anderson v. Atkinson,* 235 N.C. 300, 69 S.E. 2d 603, the Court said: "The right to amend pleadings does not permit the litigant to set up a wholly different cause of action or change substantially the form of the action originally sued upon." In the complaint plaintiff alleged that "on or about July 10, 1961, the plaintiff, in Mecklenburg County, North Carolina, placed an order by telephone with the Washington, D. C. office of the defendants; that this order was for ten thousand (10,000) shares of Hydramotive Corporation at the price of $5,500.00; that this 'unsolicited' order was filled by the defendants, as agent,

through its own offices or through its clearinghouse in New York, New York." The plaintiff has specifically alleged in the complaint that defendants acted as her agent. Among other things in their proposed amendment they allege that defendants acted "as agent of the selling dealer or dealers." If the proposed amendment does not set up a wholly different cause of action, it is certain that it changed substantially the form of the action originally sued upon. It is manifest that the proposed amendment seeks to allege a cause inconsistent with the allegations of the complaint.

Plaintiff cannot be heard to complain of the refusal of Judge Gambill to amend her complaint for the reason that it was made after she had appealed from a final judgment in open court to the Supreme Court, and that appeal *eo instanti* transferred jurisdiction to the Supreme Court, and thereafter the Superior Court was *functus officio* to permit an amendment to the pleadings. 1 Strong, N. C. Index 2d, Appeal and Error, § 16. The exceptions to the general rule that pending an appeal the Superior Court is *functus officio* are set forth in *Hoke v. Greyhound Corp.*, 227 N.C. 374, 42 S.E. 2d 407, which exceptions are not relevant here.

The judgment below is

Affirmed.

HUSKINS, J., took no part in the consideration or decision of this case.