**Lloyd L. BOEHNEN, Plaintiff,**

v.

**WALSTON & CO., INC., a corporation, and James Nissan, Defendants.**

**Civ. No. 71–75S.**

United States District Court, D. South Dakota, S. D.

May 4, 1973.

Harold C. Doyle, of May, Johnson & Burke, Sioux Falls, S. D., and Richard B. Solum, of Henson & Tully, Minneapolis, Minn., for plaintiff.

Carleton R. Hoy, of Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., for defendants.

Julian H. Brown, Asst. Atty. Gen., Pierre, S. D., for applicants for intervention.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

Pursuant to Rule 56, Fed.R.Civ. P., plaintiff, Lloyd L. Boehnen, has moved for summary judgment in his suit against Walston & Co., Inc., a securities dealer, and James Nissan, its agent. Federal jurisdiction is alleged pursuant to the Securities and Exchange Act of 1934, 15 U.S.C. Secs. 78, 78aa, as amended. In addition, jurisdiction is purportedly established under 28 U.S.C. Sec. 1332, as a diversity suit.[1] Plaintiff claims this court has pendent jurisdiction over nonfederal questions arising out of the same transaction.

---

1. The complaint alleges the *residency* of the parties involved. Technically, the consideration for determining diversity jurisdiction is the *citizenship* of the parties. The complaint fails to make this necessary allegation. 28 U.S.C. Sec. 1332.

Boehnen's five count complaint alleges five separate causes of action.[2] In their respective order the complaint alleges: (1) violations of 10(b) and rule 10b-5 of the Securities and Exchange Act of 1934; (2) common law fraud; (3) violations of South Dakota Blue Sky Laws; (4) violations of the rules of the New York Stock Exchange.

The motion for summary judgment is premised upon Count Three, violations of the South Dakota Blue Sky Laws. Chapter 47-31 SDCL (1967). Plaintiff specifically contends that the South Dakota Blue Sky Laws were violated in that defendant Walston, through its agent defendant Nissan, sold several different stocks to him as a resident of South Dakota, without Nissan being licensed under South Dakota law to do so. SDCL 47-31-47 (1967).[3] It is further alleged that the stocks sold to Boehnen were not registered for sale in accordance with

the laws of the State of South Dakota. SDCL 47-31-9 (1967).[4] The relief sought pursuant to this count is a judgment against defendants for the purchase price of said securities, plus interest from the date of purchase, along with costs and disbursements of this action and reasonable attorney fees. SDCL 47-31-133 (1967).[5]

It is the defendants' "position that the South Dakota Blue Sky Laws have no bearing upon and are not material to the issues involved in this litigation, this because there was no security 'offered for sale or sold within the State of South Dakota' as required by SDCL 47-31-9"; that it was agreed that the defendants were to act as brokers for the plaintiff in all transactions which took place in this controversy and that New York law would apply.

The facts disclosed by the pleadings, affidavits, answers to interrogatories,

2. Pursuant to multi-district litigation initiated in the Western District of Oklahoma, Count Five of the complaint has been settled and dismissed from this litigation. *See* In re Four Seasons Securities Laws Litigation, Civil Action No. Civ. 73-139-T (W.D.Okla.1973).

3. SDCL 47-31-47 (1967) provides:
Agent's license.—No person shall do anything subject to the provisions of this chapter in the capacity of an agent unless or until he shall have been licensed as provided in Secs. 47-31-48 to 47-31-51, inclusive.

4. SDCL 47-31-9 (1967) provides:
Sale of unregistered securities prohibited—Exemptions—Registered brokers and agents—Federally registered securities.—No securities except those exempted by §§ 47-31-67 to 47-31-81, inclusive, and those sold in a manner exempted by §§ 47-31-82 to 47-31-92, inclusive, shall be offered for sale or sold within the state of South Dakota unless or until such securities have been registered as provided in § 47-31-10, except that it shall be permissible for registered brokers and agents to offer for sale in South Dakota prior to registration under Sec. 47-31-10 securities for which a registration statement has been filed under the Federal Securities Act of 1933.

5. SDCL 47-31-133 (1967) provides:
Liability for refund to purchaser—Amount of refund—Attorney's fees.—Upon tender to the seller or into court of the securities sold or, where the securities were not received of any contract made in respect of such sale, the issuer, controlling person, underwriter, broker or other person by or on behalf of whom any sale was made in violation of the provisions of this chapter, and each underwriter, broker or agent who shall have participated or aided in any way in making such sale, and in case such issuer, controlling person, underwriter or broker is a corporation or unincorporated association or organization, each of its officers and directors (or persons performing similar functions) who shall have participated or aided in making such sale, shall be jointly and severally liable to such purchaser for
(1) the full amount paid, together with interest from the date of payment for the securities sold at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the legal rate of interest) less any income or other amounts received by such purchaser on such securities and
(2) the reasonable fees of such purchaser's attorney incurred in any action brought for the recovery of the amounts recoverable under subdivision (1) of this section.

and depositions show that: In October, 1968, Boehnen, while attending a pre-Notre Dame football game social function, became acquainted with a Chicago, Illinois, businessman, Judson Sayre. Sayre agreed to introduce Boehnen to one of his brokers, James Nissan of Walston & Co., Inc. Defendant Nissan is a broker registered on the New York Stock Exchange and, for the issues involved here, was never physically present in South Dakota. Defendant Walston & Co., Inc., is a nationwide securities dealer licensed to do business in all states. A telephone call between Chicago and New York provided Boehnen's initial introduction to Nissan. Thereafter, on October 7, 1968, Boehnen completed the Walston & Co. Customer Agreement form sent to him by the defendants from New York. Defendants deem these two provisions of that Agreement significant:

14. In all transactions between you and the undersigned, the undersigned understands that you are acting as the brokers of the undersigned, except when you disclose to the undersigned by your formal confirmation or otherwise in writing that you are acting, with respect to a particular transaction, as dealers for your own account or as brokers for some other person.

18. The provisions of this agreement shall in all respects be construed according to, and the rights and liabilities of the parties hereto shall in all respects be governed by, the laws of the State of New York.

Defendant Walston & Co., through its agent Nissan, handled the plaintiff's security transactions until July, 1969. All business between the parties was transacted by telephone and by use of the mail. Plaintiff Boehnen made numerous stock transactions with the defendants, four of which stocks are in dispute in this litigation. The stocks in issue are the common stock of Dasa Corporation (5,-000 shares for $189,353), KSF Chemical Processes (1,000 shares for $5,867), National Computer Analysts (500 shares for $12,490), and Princeton Time Sharing Services (500 shares for $12,657). To-

gether a total of $220,367 was paid in consideration for these purchases.

Rule 56 of the Federal Rules of Civil Procedure provides "a method for promptly disposing of actions in which there is no genuine issue as to any material fact or in which only a question of law is involved." 10 C. Wright and A. Miller Federal Practice and Procedure Sec. 2712 (1973). The crux of the issue presented by this motion is whether or not South Dakota law is applicable under these circumstances and, if found to be applicable, whether or not the record now before this court raises a "genuine issue as to any material fact" requiring a trial. I conclude that the South Dakota Blue Sky Laws, could apply, depending upon plaintiff's proof, and that the present state of the record reveals an issue of fact for trial.

## DOES SOUTH DAKOTA LAW APPLY?

■■ It is the defendants' first contention that the South Dakota Blue Sky Laws do not apply because the parties have expressed their intentions that the laws of New York should govern. Paragraph 18 of the Customer's Agreement provides the basis upon which the defendants make this assertion. A close reading of that paragraph discloses that it is the construction of the provisions of that agreement upon the rights and liabilities of the parties thereto which will be governed by New York law. The plaintiff does not quarrel with the provisions of the Customer's Agreement, therefore a construction of its provisions is unnecessary. However, the plaintiff is alleging acts of the defendants, in selling or offering for sale securities, which fall within the clear language of the South Dakota Blue Sky Laws. The agreement's choice of law provision, selecting New York law as governing, simply does not apply to the alleged actions of the defendants in alleged violations of the South Dakota Blue Sky Laws.

Thus a stipulation by which the parties select the law to govern the contract is valid and will be given effect only if

it is not contrary to public policy generally, or to the public policy of the forum, . . . , or in violation of a statute of the forum enacted for the protection of its citizens, . . . .

16 Am.Jur.2d Conflicts of Laws Sec. 46 (1964). The purpose of the South Dakota Blue Sky Laws is to protect the public. State v. Martin, 187 N.W.2d 576, 580 (S.D.1971). To permit the choice of law stipulation in question to control the determination of whether or not South Dakota law will apply, would be to provide an effective means of circumventing legislation designed to protect the citizens of South Dakota. This would clearly be against public policy.

Secondly, it is contended by defendants that under the fact situation presented here the blue sky laws of the forum court are not involved. This argument is based principally upon the cases of Doherty v. Bartlett, 81 F.2d 920 (1st Cir. 1936), *cert. denied sub nom.,* Doherty v. Knowlton, 298 U.S. 676, 56 S.Ct. 941, 80 L.Ed. 1398 (1936), and Lane v. Griswold, 273 N.C. 1, 159 S.E.2d 338 (1968). Both decisions are distinguishable from the suit now before this court.

In *Doherty, supra,* Bartlett, a resident of Manchester, New Hampshire, phoned a brokerage firm located in Boston, Massachusetts to inquire about a previous purchase. During the conversation a salesman prevailed upon Bartlett to purchase additional stock. Although the brokerage firm was registered in New Hampshire as a dealer, the salesman was not registered there. The court ruled that while "(t)he solicitation and offer to sell the stock was made by (the salesman) in Massachusetts, and, while the consummation of the transaction was the acceptance by telephone by Bartlett in Manchester, Restatement of the Conflict of Laws § 325, we do not think the effect of this conference over the telephone was a violation of the New Hampshire statute." 81 F.2d at 928. The court further stated that no act of the salesman, either of solicitation or of-

fer of sale, took place in New Hampshire. The salesman violated no provision of the New Hampshire law by soliciting sales in Massachusetts, where he was duly licensed. Without discussion the First Circuit Court of Appeals in *Doherty* construed the defendants' acts to not violate New Hampshire law. The consequence of this decision is that by the simple expedient of using a telephone, as opposed to physically entering a state, an unlicensed security salesman can thwart the prohibitions of a state's Blue Sky Laws. The *Doherty* opinion is not persuasive on this point and I choose not to follow its ruling. *Accord,* L. Loss, The Conflict of Laws and the Blue Sky Laws, 71 Harv.L. Rev. 209, 247 (1957).

The *Lane v. Griswold* decision is similarly distinguishable. The court in *Lane* was confronted with an unsolicited sale to a customer. Here, the allegations and contentions of the plaintiff are premised upon the acts of the defendants in soliciting the sales in controversy. Indeed, the application of the South Dakota Blue Sky Laws, by definition, requires a solicitation for the offer for sale. Thus both cases relied upon by the defendants are factually distinct from our immediate suit.

Having concluded that New York law does not govern, the question remains whether South Dakota law is applicable. The problem thus becomes not one of a conflict of laws but, rather, whether as a matter of statutory construction South Dakota Blue Sky Laws apply.

It is the defendants' contention that no security was ever offered for sale or sold within the State of South Dakota as prohibited by SDCL 47–31–9 (1967). South Dakota Compiled Laws 47–31–1(3) (1967) provides:

"Sale" or "sell" shall mean every sale or other disposition of a security or interest in a security for value, and every contract to make any such sale or disposition. Any security given or delivered with, or as a bonus on account of, any purchase of securities or any other thing, shall be conclusively presumed to

constitute a part of the subject of such purchase and to have been sold for value. *"Offer to sell" or "offer for sale" shall mean every attempt or offer to dispose of, or solicitation of an order or offer to buy, a security or interest in a security for value.* Every sale or offer for sale of a warrant or right to subscribe to another security of the same issuer or of another issuer, and every sale or offer for sale of a security which gives the holder thereof a present or future right or privilege to convert such security into another security of the same issuer or of another issuer, shall be deemed an offer to sell the security to be acquired by such subscription or conversion; (emphasis added).

The scope of SDCL 47–31–1(3) (1967) is self-evident. As a general rule remedial legislation, such as enacted here to protect the unwary buyer, should be liberally construed to effect that purpose. Hofer v. General Discount Corporation, 192 N.W.2d 718 (S.D.1971).

It is the plaintiff's contention that the defendants offered to sell or offered for sale securities to Boehnen in South Dakota; *i. e.*, the defendants solicited Boehnen's business over the telephone from New York. This contention is disputed by the defendants. Thus, whether South Dakota law applies will depend upon plaintiff's proof at trial. If the evidence shows that there has been a solicitation in South Dakota the South Dakota Blue Sky Laws will be enforced.

Plaintiff's motion for summary judgment is denied.

A motion to intervene pursuant to Federal Rule of Civil Procedure 24(b)(2) has been made by the State of South Dakota and its Securities Commissioner. The whole thrust of the 1948 Amendment to Civil Rule 24(b)(2), permitting government intervention where a statute is involved, "is in the direction of allowing intervention liberally to governmental agencies and officers to speak for the public interest." 7A C. Wright and A. Miller, Federal Practice and Procedure Sec. 1912 (1972). The State's motion for intervention is granted.